ANNA E. MOON v. THE CITY OF IONIA.          81   635;
                                           f124  136'

*Municipal corporations—Negligence—Defective sidewalks—Lack of
        funds—Borrowed money.*

1. On a review of the testimony in this case, it is held that there
   was evidence to go to the jury from which they would have a
   right to find that the defendant had either actual notice of the
   defective condition of the sidewalk upon which plaintiff was
   injured, or was in fault in not knowing of it.[1]

2. The failure of a city marshal, and of the sidewalk repairers
   employed by him, to discover a loose plank in a sidewalk
   which they claimed to have repaired, is held, under the cir-
   cumstances of this case, carelessness.

3. In a suit to recover for injuries sustained by reason of the non-
   repair of a city sidewalk under Act No. 264, Laws of 1887,
   which took effect June 27, 1887, it was claimed by the defend-
   ant that sufficient time had not elapsed after the law became
   operative, and before the accident, which occurred August 18,
   1887, to enable the city to raise by tax the money necessary to
   put the sidewalk in repair. The city charter authorized the
   common council to raise money by tax to defray the expenses
   of the city, but prohibited the council from pledging the credit
   of the city for such purpose. The committee on ways and
   means had borrowed money with which to repair the sidewalks,
   and there were ample funds in the treasury for such purpose.
   And it is held that the city cannot escape liability while using
   the funds thus provided by discrediting the source from which
   they were received.

Error to Ionia. (Smith, J.) Argued June 6, 1890.
Decided July 2, 1890.

Case for injuries from defective sidewalk. Defendant
brings error. Affirmed. The facts are stated in the
opinion.

[1] See *Campbell v. City of Kalamazoo*, 80 Mich. 656, holding that
actual notice or knowledge is not required.

*John H. Mitchel* and *McGarry & Ford,* for appellant, contended:

1. A municipal corporation is not liable for injuries caused to individuals by obstructions in the highway not placed there by its own officials or by authority of the city government, until after actual notice of their existence, or until, by reason of lapse of time, it should have had knowledge, and therefore actual notice may be presumed; citing *Hume v. Mayor,* 47 N. Y. 639.

2. Defendant is not chargeable for any injury resulting from an obstruction of a public street not caused by the acts of its authorized agents, especially when notice of the obstruction is not brought home to the city authorities; citing *Griffin v. Mayor,* 9 N. Y. 461; *Requa v. Rochester,* 45 Id. 129; *Dorlon v. Brooklyn,* 46 Barb. 604; *Doulon v. Clinton,* 33 Iowa, 397; *Cleveland v. St. Paul,* 18 Minn. 279; *Rapho v. Moore,* 63 Penn. St. 404.

3. Notice to the public authorities of defects or obstructions in the streets, not occasioned by their own acts, must be express, or the defects must be so notorious as to be evident to all who have occasion to pass the place or observe the premises; citing *Hart v. Brooklyn,* 36 Barb. 226; *Reed v. Northfield,* 13 Pick. 94; *Worster v Canal Co.,* 16 Id. 541; *Ward v. Jefferson,* 24 Wis. 342; *Hubbard v. Concord,* 35 N. H. 52; *Howe v. Lowell,* 101 Mass. 99; *Bloomington v. Bay,* 42 Ill. 503; *Decatur v. Fisher,* 53 Id. 407; *Canal Co. v. Graham,* 63 Penn. St. 290.

4. The discretionary power to determine how many officers are required is one of a legislative character, which can neither be reviewed nor made a basis of complaint against the city; citing *Griffin v. Mayor,* 9 N. Y. 456; *Dewey v. Detroit,* 15 Mich. 307, 313.

5. In support of the proposition that the act of 1887 and the provisions of defendant's charter should be construed together, and that defendant's duty to maintain its sidewalks in the manner prescribed in the act does not become fixed until defendant has had reasonable time to *legally* procure means to accomplish that result, counsel cited *Falconer v. Campbell,* 2 McLean (U. S.), 212: *Society v. Wheeler,* 2 Gall. 139; *Dash v. Van Kleeck,* 7 Johns. 477; *O'Leary v. Board,* 79 Mich. 231.

*Lemuel & William Clute,* for plaintiff, contended:

1. What constitutes " notice " of such defects has been many times construed by the courts, and, the term " notice " having been judicially construed, it will be presumed to be used in the statute in the sense in which the courts have interpreted the

word; citing *Dotton v. Albion*, 50 Mich. 129; *Sheel v. Appleton*, 49 Wis. 125.

2. It was for the jury to say what length of time the defect must have existed in order to charge defendant with notice; citing *Woodbury v. Owosso*, 64 Mich. 239; *Merkle v. Bennington*, 68 Id. 133; *Malloy v. Walker*, 77 Id. 448.

CAHILL, J. On August 18, 1887, the plaintiff, with her husband and infant child, attended the Grand Army encampment held at Ionia on the 16th, 17th, and 18th of that month. On the afternoon of the 18th she was walking with her husband on Main street, in that city. She was on the south side of the street, going west. She carried her little child in her arms, and her husband was carrying an armful of goods. As they came near to the Novelty Mills, her husband, being on the outside of the walk, stepped on the end of a loose plank, which tipped up under his foot and tripped his wife. She fell heavily to the walk upon her left side. She was picked up and carried into a hotel, and subsequent medical examination tended to show that she had suffered a fracture of the neck of the *femur*. The injury was very painful, and resulted in the plaintiff's being confined to her bed for several weeks, and she was compelled to walk on crutches for several months. It resulted also in a slight shortening of her leg, which is permanent. This action was brought under the statute of 1887 to recover damages for the injury. The case was tried before the court and a jury, and a verdict rendered for the plaintiff for $2,000. The defendant brings error.

A large number of errors are assigned upon the record, but the only ones discussed by the counsel for appellant in their brief or on the oral argument are:

1. Did the defendant, if liable for the injury, have a fair and impartial trial?

2. Was the defendant liable for the injury in any event?

In support of the first point counsel say—

1. That the case was not submitted to the jury upon the proper theory.
2. That the jury was not properly guarded as to the duty of the defendent in the employment of agents, and in the diligence required of them.

Upon the first point it is claimed by the appellant that the testimony of the defendant tended to show that on August 15, 1887, the sidewalk in question had been repaired under the direction of the marshal, and placed in a condition reasonably safe and fit for travel; that it subsequently became unsafe by reason of teams driving across and loosening the planks; that after the planks had become thus loosened there was no evidence in the case tending to show notice to or knowledge by the defendant, or any of its officers, of the loose or unsafe condition of the planks; that, as a matter of law, no sufficient time had elapsed from the 15th to the 18th within which knowledge could be imputed to the city. Upon this point counsel for appellant requested the court to charge the jury as follows:

"If the jury find that the sidewalk in question was repaired on or about the 15th day of August, 1887, and placed in condition reasonably safe and fit for public travel, and that it subsequently became defective by reason of teams driving across and loosening the plank or planks thereof, and that by reason of such loose plank or planks the plaintiff was injured, as alleged in her declaration, then, as a matter of law, I charge you that there is no neglect on the part of the defendant, and your verdict must be, 'No cause of action.'

"If the jury find that a short time prior to the time that the plaintiff tripped and fell the sidewalk in question was in a reasonably safe and fit condition for public travel, and had become unsafe or insecure by reason of teams driving across the same, and loosening the planks

thereof, or otherwise, then I charge you, as a matter of law, that there was no neglect on the part of the defendant in not discovering and repairing said defect prior to said accident, and your verdict must be for the defendant.

"Under the circumstances of this case, if the sidewalk was repaired on or about the 15th day of August, 1887, and placed in a condition reasonably safe and fit for public travel, then there can be no recovery on the part of the plaintiff, and your verdict must be for the defendant."

The court gave the defendant's ninth request on this subject, as follows:

"The statute under which this action was brought contemplates that the defendant must have notice of the defect complained of, or have knowledge of such defect, and a reasonable time and opportunity thereafter to put said sidewalk in proper condition for use, and has not used reasonable diligence therein after such knowledge or notice.

"Therefore, if the jury find that on or about the 15th day of August, 1887, the sidewalk in question was placed in a condition reasonably safe and fit for public travel, and subsequently, and prior to said accident, became defective for any cause, and unsafe and unfit for travel, and that there was no notice of nor knowledge by said city that said sidewalk had become unsafe and insecure, then I charge you, as a matter of law, that the plaintiff has failed to establish a case, and your verdict must be for the defendant."

And also, upon its own motion, the court instructed the jury as follows:

"Now, some of the witnesses tell you the condition of the walk from the 15th to the 18th. Plaintiff claims it was out of repair from the 14th to the 18th; the defendant says it was repaired on the 15th; and the marshal says he passed over it after the 15th. Now, if repaired on the 15th, was it out of repair thereafter; and, if it was not, plaintiff cannot recover, of course; that is, if it was repaired—properly repaired—on the 15th, and got out of repair thereafter, then the plaintiff could not recover. But if out of repair required by the statute after the

15th, assuming that it was repaired then on the 15th, then the plaintiff cannot recover, unless you find that after the repairs—after the 15th—it became defective, so that it was not in reasonable repair, and not reasonably safe and convenient for public travel, and that the defendant had notice or knowledge of its defective condition, and had reasonable time and opportunity, after such knowledge or notice, to repair, and did not use reasonable diligence. Now, gentlemen, there is no direct evidence of notice or knowledge of a defect after August 15th, that I remember. Do the circumstances show that the defendant did know? Under the statute, *I do not think it will do to show that the city ought to have known, and are liable, or claim, under the circumstances, that they should have known.* The statute requires that they have notice or knowledge of the defect, but whether they had notice or knowledge may sometimes be proven from circumstances; and that is a question for you to settle in this case from the evidence of the witnesses, and the surroundings and the circumstances show what is the truth. Did the city know of the defect before the fall, and did it fail to use reasonable diligence in repairing the defect?"

Fault is found with this charge of the court because it is said the court left it to the jury to determine whether the city had actual notice or knowledge of the defect, which, if the testimony of the witness Brooks was true, may have existed only a few hours before the accident, whereas it is said there was no evidence tending to show such notice or knowledge. Mr. Brooks, called as a witness for defendant, testified as follows:

"I reside in Orleans. Am a school-teacher. During the last three days of the encampment I was running a peanut stand near the Novelty Mills. I saw a lady fall on next to the last day. There was only one lady fell there during the encampment. I don't know whether it was Mrs. Moon or not, but it is the lady here in court. *In the morning of that day she fell.* There had several teams passed over the walk in the morning of the day she fell. The plank she fell on was loosened by a loaded team passing over it. It occurred about two o'clock that afternoon. I saw several other teams pass over it, but they did not loosen it. There was plenty of room for teams

to cross without going over the sidewalk, if they went far enough before turning."

On cross-examination the witness testified:

"I could not say what day of the month it was that the team went over the walk. It was the day that the accident occurred. I think it was the next to the last day of the encampment, but I could not say positively. The team had bags with some kind of grain in."

We are unable to deduce anything very definite from this testimony. It would seem from this witness that Mrs. Moon was injured *in the morning,* and that the plank she fell over was loosened by a team driving over it *about two o'clock on the same day.* If the record shows fairly what this witness testified to, I am not surprised that the court declined to base any instructions to the jury on it.

The testimony of a large number of witnesses taken showed that the walk had been out of repair for some time prior to August 15. Mr. Edward N. Pelzer, city marshal in 1887, and also *ex officio* street commissioner, called for the defendant, testified that he had noticed the condition of this walk about a week before the 15th.

"I was giving my whole attention at that time to getting the city in trim for the encampment, especially streets, bridges, and sidewalks. I went over first that part of the city that I thought would be traveled most, and gave it a thorough inspection. I made a note of the places that needed repairs, and I had the men follow me in doing the work. I went over the work afterwards. I examined this particular walk."

He further testified as follows:

"I noticed at the time that there was one plank loose. I told the men to go to the city hall and get some plank there was there, and replace the defective one. *  *  * I passed over this walk when these men had worked upon the walk. I saw nothing defective about it when they

81 MICH.—41.

got through, nor during the days of the encampment, when I walked over the place every day."

From this testimony it would appear that the city marshal had ample opportunity to know if the walk was out of repair between August 15 and 18, as he says he passed over it every day. It appears also that the defect consisted in one loose plank, which was so easily remedied that it was fixed within half an hour after the accident.

We agree with counsel for defendant, and with the trial judge, that if the walk was repaired on August 15, and was out of repair on the 18th, the length of time was too short to allow a presumption of knowledge on the part of the city; that actual notice of the defect would be necessary; and yet, if the defect was so apparent that numerous witnesses discovered it while casually passing over the walk, we are not prepared to say, as a matter of law, that it was not negligence in the city marshal not to discover the same defect while passing over it, as he says he did, every day during the encampment. If we could give to the testimony of Brooks the force claimed for it by defendant's counsel, we should agree with him that the court should have given his sixth and seventh requests. But on the record, as it is, we think there was evidence to go to the jury from which they would have a right to find that the city had either actual notice of the condition of the walk, or was in fault for not knowing.

The overwhelming weight of testimony in the case shows that the particular plank which caused the accident had been loose for weeks, and had not been repaired on the 15th. Mr. S. M. Norton was employed in the Novelty Mills, and saw the accident. He says:

"The stringers underneath were all rotted. * * * The plank had been loose for some time."

E. R. Dunham testified:

"There was a loose plank within two or three feet of the drive-way. I picked up this plank, and threw it out on the day of the parade, during the encampment. The reason why I threw it out was I saw it tip up as people stepped on it. * * * The stringers were rotted. * * * My attention was called to this plank by somebody stepping on it, and the end flying up."

The witness was a special watchman during the encampment.

Nelson Burt testified:

"About a week or ten days before the encampment, I was coming past the walk just east of the Novelty Mills, and caught my foot in a plank and stumbled. I took the plank up, and threw it towards the street."

Charles Eastman testified that he was in the city of Ionia, and passed over the walk in question, on July 5, 1887.

"I noticed the condition of the walk the whole length between the drive-way and the mill. I noticed the second plank, I think it was. A party I was walking with at that time stepped on a plank, and it flew up and struck me on the foot. I sprang and caught myself, and did not fall down. I was in Ionia on the 17th and 18th of August, 1887, and was at the place and saw Mrs. Moon fall. * * * I went for the doctor at Mr. Moon's request, and after I came back I examined the place where Mrs. Moon fell. I took up the plank and threw it off the walk. * * * Somebody undertook to nail down the plank while I was there, but it would fly up at one end when he nailed the other down. * * * I examined the stringers at the time, and they were in a decayed condition."

Ted Callow testified:

"Two or three weeks before the encampment I was walking down by the walk in question with a party. Two or three planks from the drive-way of the walk in question, the party I was with tripped and fell."

Luke Otis testified:

"I was in Ionia during two days of the encampment. On the 17th day of August I was going down past the place in question. There was a plank, I could not tell whether it was broke in two or warped, but one end of it seemed to be up, so that I stumbled and fell."

David C. Aelick testified that he was city marshal in 1883.

"The condition of the walk in question was bad in August, 1887. * * * At different times between June 21, 1887, and August 18, 1887, I have stumbled over them, and have kicked them back into their places. I go over it from one to six times a day. * * * The last time I put the plank in place at this place was on Tuesday of the encampment."

If this testimony is to be believed, it is clear that the walk was not properly repaired on August 15. This testimony shows that the walk was continuously out of repair from some time in June to the time of the accident.

This brings us to consider whether the city is relieved from liability by proof that an effort had been made in good faith by the city marshal to put this walk in repair on August 15. Defendant's counsel upon this point asked the court to instruct the jury as follows:

"The city is not guilty of negligence in not employing a greater number of overseers of its sidewalks than Marshal Pelzer, nor in not placing more men in repairing its sidewalks than the witnesses Bloomer and White; and if said marshal exercised ordinary care in the supervision of said sidewalks, and the witnesses Bloomer and White reasonable diligence in the repairing thereof, then there can be no recovery in this case, and your verdict must be for the defendant."

We do not think the city is relieved from liability in a case like this because an effort was made to repair the defect. The duty of the city is to repair the defect. To make a futile effort to do so, while the defect is so simple as it was in this case, would not relieve the

city of liability. The failure of the marshal, and of the sidewalk repairers employed by him, to discover this defect, and remedy it, was, under the circumstances, carlessness.

The second proposition discussed by counsel for defendant is that the act under which this suit is brought and the charter of Ionia, when construed together, did not impose the duty of keeping its walks in repair, and render it liable for neglect, until means could be legally provided to enable it to perform such duty. Attention is called to the fact that Act No. 264, Laws of 1887, took effect June 27. The accident in question occurred August 18 following, and it is claimed that sufficient time had not elapsed to enable the city to raise by tax the necessary money to put its sidewalks in repair. Attention is called to a provision in the charter of the city, being section 39 of Local Act No. 219, Laws of 1873 (as amended by Act No. 364, Local Laws of 1885), which reads as follows: .

"The common council shall have full power and authority to levy and collect such amount of taxes upon all real and personal property within the limits of the city as they may deem necessary to defray the expenses thereof, not to exceed in any one year one per cent. on the equalized valuation thereof for the above and all other purposes, exclusive of costs of collecting the same, except as hereinafter provided; and the common council of said city shall not have the power to incur any indebtedness against, or to issue bonds or to pledge the credit of, said city for any amount."

There might be considerable force in this position of defendant under some circumstances, but in this case the city does not seem to have been without funds that could be properly applied to the repairing of sidewalks. The defendant called as a witness Mr. A. W. Kimball, who testified that he was a member of the board of aldermen

in the year 1887, and was chairman of the committee on ways and means.

"It was the duty of that committee to supply the city with funds to the best of their ability. The city had no funds on hand from the 27th day of June to the 18th day of August of that year, except such as was borrowed by the ways and means committee. It was borrowed on the credit of the members of the committee.     *     *     * It was brought up in the city council at that time that we should put the city in good repair for the encampment, including the walks.     *     *     *     The money was used to keep up the walks and bridges."

This testimony was in harmony with that of the marshal, who testified to his carrying out the instruction of the council. There is no evidence here of lack of funds, but, on the contrary, the evidence is conclusive that the funds were ample. The city cannot escape liability while using the funds thus provided by discrediting the source from which the money was received. The money was in the treasury, put there for the express purpose of enabling the city to do its duty in repairing the streets, sidewalks, etc. If anything was needed to fix its liability in this regard, this was sufficient.

The judgment is affirmed, with costs.

The other Justices concurred.