## LOTTA LOMBAR v. THE VILLAGE OF EAST TAWAS.

*Municipal corporations—Liability for defective sidewalks—Evidence.*

1. In a negligence case for injuries sustained by reason of a defective sidewalk, it is proper for the plaintiff to produce and identify the defective plank, and to show that it was taken from the walk at the place where the plaintiff claimed to have been injured.

2. Plaintiff in this class of cases should be required to show the nature of the defect at the time of and before the accident, and when this is done, and liability is disclosed, it is unnecessary to go further, and if not done it is error to predicate the existence of an actionable defect upon the fact of repairs subsequent to the accident. *Iron Works v. Kimball Township*, 52 Mich. 146, 149. But where there is abundant proof of the existence of the defect prior to the accident, the admission of testimony showing such repairs is error without prejudice.

3. Evidence that others had stepped into the same hole in the walk before the time of plaintiff's injury is competent as bearing upon the existence and character of the defect complained of.

4. The statute gives to villages control of sidewalks, of their grade, width, material, and manner of construction. Owners of lots may be required to construct, maintain, and repair sidewalks in the streets adjacent to such lots; and, if an owner fails to

construct or repair, the village may do so at his expense, and assess the amount of such expense upon his lot.[1]

5. Land-owners may construct sidewalks in the absence of any direction by the village, subject, however, to such regulations regarding the same as may and should be prescribed by the village; and when so constructed the village must use reasonable care to prevent them from becoming dangerous, and cannot escape liability on the ground that it did not build the walk or direct its construction.[2]

6. The duty imposed upon cities and villages to keep their sidewalks in repair and reasonably safe for travel is an imperative one, and involves the duty of providing all that is necessary to that end, including not only the necessary ordinances regulating their construction, but a " full complement of officers and employés," as well as the necessary funds for that purpose.

7. On the incorporation of a village, and on assuming control over the corporate territory, it becomes its duty, in view of the statute, to take prompt measures for its observance, to supply the necessary employés, to remedy any existing defects by reason of any disconnected system, to supply the necessary regulations, and to raise the necessary funds; and after having had 15 months within which to do this, and having failed, it cannot be allowed to plead its own negligence to defeat a recovery by a plaintiff who has been injured by reason of a defective walk.

Error to Iosco. (Simpson, J.) Argued April 17, 1891. Decided May 8, 1891.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Robert Hovenden* (*Shepard & Lyon* and *O. E. M' Cutcheon*, of counsel), for appellant.

---

[1] See *City of Detroit v. Chaffee,* 70 Mich. 80, where a land-owner, who neglected to build or repair a sidewalk in front of his premises pursuant to legal notice, is held liable to the city for any accident or injuries occurring by reason of such neglect.

[2] See *Southwell v. City of Detroit,* 74 Mich. 439; *Joslyn v. City of Detroit,* Id. 458; *City of Port Huron v. Jenkinson,* 77 Id. 414 (head-note 2); *Campbell v. City of Kalamazoo,* 80 Id. 656 (head-note 4); *O'Neil v. Village of West Branch,* 81 Id. 544 (head-note 3); *Fuller v. Mayor,* 82 Id. 481 (head-note 3); *Tice v. Bay City,* 84 Id. 461.

*Geer & Williams,* for plaintiff.

[The points of counsel are stated in the opinion, where, and in the foot-notes, reference is had to the authorities. —REPORTER.]

McGRATH, J. Plaintiff recovered damages for injuries occasioned by a defective sidewalk, and defendant appeals.

Defendant was incorporated by an act of the Legislature, approved February 18, 1887, and the first election of officers was had on the second Monday of April, 1887. The first tax roll after the organization of the village was delivered into the hands of the collector in August, 1887. The plaintiff was injured June 8, 1888. The street had been a public highway for upwards of 10 years, and the sidewalk in question had been built for upwards of 6 years, but whether by the township authorities or by the abutting owner does not appear. The accident occurred in the evening, after dark.

Nine errors are assigned, the first four of which relate to the admission of testimony regarding the removal of the defective plank which caused plaintiff's fall, and the putting of another in its place. All of the witnesses testified that the accident occurred on the west side of Van Valkenburg street, between two trees in front of the residence of one Sawyer, and that there was but this one hole or defect in the walk, which had been there from one to six months. Plaintiff had located the place of the accident, and pointed it out to her sister, who. testified that plaintiff had on the next evening after the accident pointed it out to witness; that witness visited the place a second time with one Edsall, to get the plank, and she and Edsall carried it away; that it had been taken out, and they found it beside the walk. The following colloquy then took place:

"*Q*. I ask you, the second time you was there, in what condition did you find the walk, as compared with the first time, at this particular place. (Objected to by defendant as incompetent and immaterial.)

"*By the Court:* Do you propose to show that this is the identical place?

"*By Mr. Geer:* I do.

"*The Court:* She can state it, with the understanding that you show that place the identical place. It comes in with that understanding.

"Whereupon the defendant's counsel excepted to the ruling of the court, and the witness answered: The second time I was there the walk was fixed. They had torn up the walk, and removed this plank, and put another in its place.

"Whereupon the attorney for the defendant said: I move that the answer of the witness be stricken out, as incompetent and immaterial.

"*By the Court:* It is permitted to stand, with the understanding that it shall be shown to be the identical place and spot where the injury was received.

"*Mr. Geer:* I only show it and it is only admitted upon the theory for the purpose of identifying this particular place, and the plank that came out of it. That is the object, and we don't do it for the purpose of showing negligence on the part of the defendant at all.

"*Q*. At the second time you was there, where was this board that you saw the first time you was there, with the hole in it?

"*A*. It was lying by the side of a pile of other boards.

"*Mr. Shepard:* I move that the testimony in relation to the location of the board be stricken out as incompetent.

"*The Court:* It is received, with the understanding that it be shown to be the identical board that had the hole in it. (Defendant's counsel excepted)."

The plank was then produced in court, and identified by the witness. Edsall testified that within a day or two after the accident he went with the last witness to the place where the accident was said to have occurred, and, after describing the place, he testified as follows:

"*Q.* After a time, did you observe that the plank had been removed, and another put in its place? (Objected to by defendant's counsel as incompetent and immaterial).

"*Mr. Geer:* We offer'it only for the purpose of fixing the time and place.

"*Mr. Shepard:* The purpose of it is to get it before the jury, and use it in a manner that is incompetent.

"*The Court:* It is admitted for the purpose stated. (Defendant's counsel excepted).

"*Q.* Did you observe it after it had been removed?

"*A.* Yes, sir. May Lombar and I took the plank away the next day after it was removed from the sidewalk."

No testimony was offered tending to show who removed the defective plank, or who put the new plank in its place. The testimony as to the repair of the sidewalk did not tend to show either knowledge or negligence on the part of the village prior to the accident, for the fact of repair did not fix the time for which the defect existed. It did not tend to show defendant's recognition of the defect, for it was not shown that defendant made the repairs.

It has been held that the fact that repairs have been made by a municipality is a circumstance which, in connection with other circumstances, might properly be considered by the jury as tending to show that the walk removed was defective; but I cannot approve of this doctrine. Municipalities are not required to keep their sidewalks in a perfect condition. They are liable only where not reasonably safe. No liability attaches because of latent defects, unless the structure is of such a character that a failure to examine would in itself be negligence. The defect must be such as to suggest unsafety. The very step which results in injury may first disclose the unsafe condition. A slight elevation of one plank above another may not suggest danger. It may be reasonably

safe, yet it may cause an accident; and the accident may suggest the precaution of repair. To permit the fact of the precaution taken after the accident to be used as evidence of the existence of such a defect at the time of the accident as would make the municipality liable would be unjust. The plaintiff, in this class of cases, should be required to show the nature of the defect at the time of and before the accident. When this is done, and liability is disclosed, it is unnecessary to go further. When it is not done it is error to predicate the existence of an actionable defect upon the fact of repair.

In *Fulton Iron & Engine Works v. Kimball Tp.*, 52 Mich. 146, 149, Justice CAMPBELL says:

"The court admitted full testimony concerning the exact condition of the bridge at the time of and after the accident. Among this proof was testimony showing that chains and other appliances were fixed upon various parts of the bridge. Plaintiff then proposed to ask witnesses why these chains were used, but this was held irrelevant. This ruling was correct. The fact that after the accident precautions were taken does not indicate that any knowledge of the propriety of such precautions was had before the accident. Proof was not excluded of the real condition of the bridge, and the jury had means of understanding that and all its appearances."

It was entirely proper to produce and identify the plank in question, and to show that it was taken from the walk at the place where the plaintiff claimed to have been injured. Reference to the repair of the walk was perhaps inseparable from the proofs necessary to the identification of the plank, and to account for its presence at the side of the walk where it was found; but the attention of the witnesses was specially directed to the repair, and this, we think, was improper. In this instance, however, there was abundant proof of the prior existence of the defect in the walk. At least one other person had stepped into the hole some time before this, and several

witnesses testified to its existence. The error was therefore without injury or prejudice, and will not justify a reversal of the judgment.

The fifth error assigned is the admission of testimony that others had stepped into the same hole in the walk before the time of plaintiff's injury. Although there is a conflict of authority upon the question, yet, in my judgment, the testimony was admissible. The character of the walk in question was the subject of inquiry, to which attention was directed by the action, the pleadings, and the proofs. This testimony is clearly competent as bearing upon the existence and character of the defect complained of, and defendant should have been prepared to meet any proof aimed in that direction. Testimony of this character clearly tends to show the existence and nature of the defect in the walk. It may also tend to show constructive notice to defendant; and, where the accident results in death or great bodily injury, it may, by reason of its publicity, tend to show actual notice to the municipality. It is not competent to show the exercise of reasonable care by the plaintiff, and should not be admitted for that purpose; but when testimony is admissible for one purpose and inadmissible for another its improper application by the jury may and should be guarded against by proper requests limiting it to its legitimate purpose. Counsel for plaintiff, in offering the testimony, distinctly stated that he offered it for the purpose of showing the existence of the hole at that time; and for this purpose it was clearly admissible. From an examination of the cases it will be seen that the force of the argument against the admissibility of this class of testimony is materially lessened when the testimony is restricted to its legitimate purpose. The question has been very fully and ably discussed in the following cases: *Smith v. Township of Sherwood*, 62 Mich. 159, 165; *Dis-*

*trict of Columbia v. Armes,* 107 U. S. 519 (2 Sup. Ct. Rep. 840); *Chicago v. Powers,* 42 Ill. 169; *Delphi v. Lowery,* 74 Ind. 520; *Darling v. Westmoreland,* 52 N. H. 401; *Quinlan v. Utica,* 11 Hun, 217, 74 N. Y. 603; *House v. Metcalf,* 27 Conn. 631; *Topeka v. Sherwood,* 39 Kan. 690 (18 Pac. Rep. 933). Two of the cases cited by counsel for defendant in opposition to the doctrine of these cases are from the Iowa supreme court, but in a late opinion (June, 1890) Justice Granger of that court says:

"Plaintiff offered evidence to the effect that other parties had fallen into the same opening before the plaintiff, and that defendant Mansfield had been informed of the fact. The evidence was refused, and the refusal is made a ground of complaint. The ruling seems to be sustained in *Hudson v. Railway Co.,* 59 Iowa, 581 (13 N. W. Rep. 735). If it was an original question in this court, some of its members might incline to a different view." *Mathews v. City of Cedar Rapids,* 80 Iowa, 459 (45 N. W. Rep. 894).

The other assignments of error are as follows:

"6. The court erred in refusing to instruct the jury as requested by defendant in its ninth request, viz.:

"'This case should be considered differently from what a city or village would be considered that had been long in existence as an organized corporation, which has a full complement of officers and employés, and ample time to repair, construct new, and put into use its streets, cross-walks, and sidewalks, and defendant should not be held up to the same strict accountability and liability that a city or village would be which had been long in existence; and such a village might be held liable where a newly-organized one like defendant would not be. In this case, if the jury find that the time of its existence was too short to reasonably give its officers full time to make all needed repairs and improvements to provide for the safety of the traveling public, and they had done all that they reasonably could do, then the plaintiff cannot recover.'

"7. The court erred in refusing to instruct the jury as requested by defendant in its tenth request, as follows:

"'If the village had expended all the means at its command, or that it would be entitled to expend under its act of incorporation, in the building and repair of its highways, streets, sidewalks, cross-walks, and culverts, and no other money remained that it

could devote to the repair of the place where the injury was alleged to have occurred, then the plaintiff cannot recover in this case.'

"8. The court erred in refusing to charge the jury as requested by defendant in its eleventh request, viz.:

"'The corporation in this case had not been sufficiently long in existence to take advantage of the provisions of the act of June 27, 1887, in regard to streets and sidewalks, to raise an additional sum of five mills on the dollar to enable it to keep its streets, sidewalks, and cross-walks in good repair at all times.'

"9. The court erred in not charging the jury as requested by defendant in its thirteenth request, viz.:

"'In considering whether the defendant had knowledge, or in considering whether the defendant used reasonable diligence, the jury are entitled to take into account the fact that the construction of sidewalks theretofore made had been voluntary by individuals, and sidewalks had been built piecemeal and scattered in front of the property of individual residents in their own way and at their own pleasure, and no connected system having been followed, making an additional burden upon the incorporation to complete and perfect the system, and therefore more latitude should be extended to the village in and about bringing the streets and sidewalks into a proper condition that would be under other circumstances.'"

The defendant had been incorporated for 15 months. A tax for village purposes had been imposed and collected. The street commissioner testified as follows:

"Q. How much city money did you use in repairing city walks in front of any property owned by individuals, or did that $100 include that also?

"A. No, sir. Whenever I notified I don't remember of having any repairs in sidewalks made myself in that time.

"Q. Whatever you did, or any one under you, would be your own act?

"A. Yes, sir. * * * * * * * *

"Q. So you were not able to use any of the city money in making these repairs?

"A. No, sir. The people did it. I didn't have but very little trouble in that respect. The people were very willing to fix the sidewalks."

Hence the failure to cure this defect did not arise from lack of either time or means to make the repairs, but

solely because of the neglect of the street commissioner or other officer to notify the abutting owner. The statute gives to villages control of sidewalks, of their grade, width, material, and manner of construction. Owners of lots may be required to construct, maintain, and repair sidewalks in the streets adjacent to such lots; and, if an owner fails to construct or repair, the village may construct or repair at the expense of such owner, and assess the amount of such expense upon his lot. Owners, however, may construct walks in the absence of any direction by the village, subject, however, to such regulations regarding the same as may and should be prescribed by the village; and, when constructed, although by private persons, the village must use reasonable care to prevent them from becoming dangerous. The municipality cannot escape liability on the ground that it did not build the walk or direct its construction. *Champaign v. McInnis*, 26 Ill. App. 338; *Shannon v. Town of Tama City*, 74 Iowa, 22(36 N. W. Rep. 776).

The duty imposed upon cities and villages to keep their sidewalks in repair and reasonably safe for travel is an imperative one. It involves the duty of providing all that is necessary to that end, including not only the necessary ordinances regulating their construction, but a "full complement of officers and employés," as well as the necessary funds for that purpose. Coming into this territory, it was the defendant's duty, in view of this statute, to take prompt measures for its observance, to supply the necessary employés, to remedy any defects that existed by reason of any "disconnected system," to supply the necessary regulations, and to raise the necessary funds. The defendant had more than 15 months within which to do this, and, having failed, it cannot be allowed to plead its own neglect to defeat a recovery.

The facts did not warrant the giving of the instructions requested, and they were properly refused.

The judgment is affirmed, with costs of both courts to plaintiff.

The other Justices concurred.