Donna **BERNIER**, Personal Representative of the Estate of Michael Moon, Deceased, Plaintiff,

v.

**BOARD OF COUNTY ROAD COMMISSIONERS FOR the COUNTY OF IONIA, Defendant.**

No. G81–946 CA.

United States District Court, W.D. Michigan, S.D.

June 28, 1983.

Reid, Reid & Mackay by Michael H. Perry, Lansing, Mich., for plaintiff.

O'Connor, McNamara & O'Keefe by Rex O'Connor, Ionia, Mich., for defendant.

## OPINION RE PENDING MOTIONS

HILLMAN, District Judge.

This is a diversity action for wrongful death. Plaintiff's decedent was her 17-year-old son, Michael Moon, who was killed when the vehicle he was driving was struck at the intersection of Stedman Road and Woods Road in Ionia County, Michigan. Plaintiff contends that the accident was caused by the county's failure to properly mark the intersection, and sues in her individual and representative capacities. The following matters are presently before the court:

1. Plaintiff's motion for partial summary judgment;
2. Plaintiff's and defendant's motions in limine;
3. Defendant's memorandum of law on negligent infliction of emotional distress; and
4. Plaintiff's brief in support of exemplary damages.

I will address these matters in the order listed above.

## I. MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff seeks partial summary judgment, pursuant to Fed.R.Civ.P. 56, on defendant's affirmative defense that decedent was operating his motor vehicle while under the influence of alcohol. Plaintiff maintains that following decedent's death, the Ionia County Medical Examiner, at the request of the Michigan State Police Officer investigating the case, obtained a blood sample from decedent which revealed that decedent's blood-alcohol content was 0.06%.

Plaintiff argues that she is entitled to partial summary judgment on defendant's allegation that the decedent was intoxicated since Michigan law holds that an individual is presumed not to be intoxicated if that person's blood-alcohol content is determined to be less than 0.07%.

Defendant maintains that it intends to offer testimony at trial, from an individual who was with plaintiff's decedent the evening of the accident, who will testify that the decedent consumed a certain quantity of alcohol prior to the accident. It is defendant's contention that the alcohol allegedly consumed by the decedent affected his ability to operate a motor vehicle. Defendant does not dispute plaintiff's assertion that decedent's blood-alcohol content was 0.06% at the time the blood test was taken, but disagrees with plaintiff's interpretation of the statutory presumption contained in M.C.L.A. § 257.625a(1)(a), which provides in part:

"Sec. 625a. (1) In a criminal prosecution for operating a vehicle while under the influence of intoxicating liquor, for operating a vehicle while visibly impaired, or in a criminal prosecution pertaining to manslaughter or negligent homicide resulting from the operation of a motor vehicle, while the driver is alleged to have been under the influence of intoxicating liquor, the amount of alcohol in the driver's blood at the time alleged as shown by chemical analysis of the persons' blood, urine, or breath * * * shall be admissible into evidence * * *. If a test is given, the results of the test shall be made available to the person charged or the persons' attorney upon written request to the prosecution, with a copy of the request filed with the court. The prosecution shall furnish the report at least 2 days before the day of the trial and the results shall be offered as evidence by the prosecution in a criminal proceeding. Failure to fully comply with the request shall bar the admission of the results into evidence by the prosecution. The amount of alcohol in the driver's blood at the time alleged as shown by chemical analysis of the persons' blood, urine, or breath shall give rise to the following presumptions:

(a) If there was at the time 0.07% or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor."

Federal Rule of Evidence 302 provides as follows:

"In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which state law supplies the rule of decision is determined in accordance with state law."

Rule 302 has been construed to mean that state substantive law, pursuant to *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), rather than federal procedural law, supplies the rule of decision. *Melville v. Am. Home Assur. Co.,* 443 F.Supp. 1064 (E.D.Pa.1977), *rev'd on other grounds,* 584 F.2d 1306 (3d Cir.1977).

In *McNitt v. Citco Drilling Co.,* 397 Mich. 384, 245 N.W.2d 18 (1976), the Michigan Supreme Court held that the results of a blood test for alcohol content taken from a live person are inadmissible in evidence in a civil action unless the test results were obtained in conformity with the requirements of M.C.L.A. § 257.625a (i.e., with the individual's consent). Thereafter, the Michigan Court of Appeals, in addressing M.C.L.A. § 257.625a(1)(a), held that "the statutory presumption arises only through a statutorily coerced implied consent to the withdrawal of a sample specimen, and is limited to criminal prosecutions for driving under the influence of intoxicating liquor, it has no application in a civil action for damages." *Groth v. DeGrandchamp,* 71 Mich. App. 439, 248 N.W.2d 576 (1976). Both *McNitt* and *Groth* involved blood tests taken from live persons and subsequently proffered during trial as proof of intoxication, and, therefore, concerned "issues of search and seizure/right to privacy, security of person or statutory construction." *Hubenschmidt v. Shears,* 403 Mich. 486, 270 N.W.2d 2 (1978).

In *Hubenschmidt,* however, the Michigan Supreme Court held that if the proponent of a blood alcohol test taken from a dead body can show the "requisite foundation establishing the integrity of the test results and the evidence is determined to be relevant by the trial judge," the results may be admitted into evidence in a civil action. 403 Mich. at 490, 270 N.W.2d 2. The court reasoned that the "nonconsensual blood extraction from an already dead body" does not amount to an illegal search and seizure. *Id.* at 489, 270 N.W.2d 2. In addition, the court noted that "evidence of the consumption of alcohol by the decedents in these wrongful deaths could potentially be relevant to the issue of contributory negligence raised as an affirmative defense by each defendant." *Id.* at 490, 270 N.W.2d 2.

■ In view of the foregoing, I am convinced that plaintiff is not entitled to judgment as a matter of law on defendant's affirmative defense of intoxication. Plaintiff is asking the court, in effect, to hold that since decedent's blood-alcohol content was less than 0.07% following his death, as evidenced by the medical examiner's test results which have been attached to plaintiff's motion, the statutory presumption set forth in M.C.L.A. § 257.625a(1)(a) determines, as a matter of law, that the decedent was not under the influence of alcohol. Thus, according to plaintiff, defendant should be precluded from relying on the intoxication of the decedent as an affirmative defense, and any mention of alcohol should not be permitted at trial.

However, based on the decision of the Michigan Supreme Court in *Hubenschmidt v. Shears, supra,* I am convinced that defendant should be allowed to assert that decedent's ability to operate a motor vehicle was affected by his alleged consumption of alcohol prior to the accident. In this regard, however, plaintiff will be entitled to rebut this evidence by introducing the results of the blood-alcohol sample taken from decedent's body if plaintiff satisfies the foundational requirements for the admission of such evidence, as they are set forth in *Hubenschmidt v. Shears, supra,* and *Gard v. Michigan Produce Haulers,* 20 Mich.App. 402, 407–409, 174 N.W.2d 73 (1969).

■ Still in question, however, is the effect, if any, of the presumption contained in M.C.L.A. § 257.625a(1)(a) on the proofs at trial and/or on the court's instructions to

the jury at the close of proofs. As to the former, I am satisfied that the language of section 257.625a(1)(a) may be introduced in evidence at the upcoming trial if it is relevant when offered. Fed.R.Evid. 401. However, I will defer a ruling on this question until it arises during the course of the trial, if in fact it does. Suffice it to say, that if defendant argues that the decedent was intoxicated, and plaintiff establishes the requisite foundation for the admissibility of decedent's blood-alcohol test, it seems to me that the language of section 257.625a would have relevance only with respect to the significance of a blood-alcohol level of less than 0.07% in the context of a criminal prosecution for driving while intoxicated.

As to the latter, however, I am not persuaded, at this juncture, that the jury should be instructed on the basis of the statutory presumption contained in section 257.625a(1)(a). For example, if the jury were instructed to infer that if the decedent had a blood-alcohol level of 0.07% or less, then he is presumed "not under the influence of intoxicating liquor," it would only be relevant to show that the decedent could not have been convicted of "operating a vehicle while under the influence of intoxicating liquor." M.C.L.A. 257.625a. However, a conclusion by the jury that decedent could not have been convicted of such a crime, as it has been defined by the Michigan legislature, would not resolve the factual question of whether decedent's ability to operate the vehicle in question was actually affected. In any event, this question is more properly reserved for consideration at the close of proofs and prior to submission of the case to the jury. Counsel may submit briefs addressing these issues and/or present oral argument at the appropriate time.

Accordingly, for the reasons stated, plaintiff's motion for summary judgment is hereby denied.

## II. MOTIONS IN LIMINE

Defendant has asserted an affirmative defense that it did not have sufficient funds to properly maintain the intersection.

In her motion in limine, plaintiff first requests that defendant be precluded from offering any evidence in support of its "lack of funds" defense. Plaintiff challenges the defendant's proposed use of any evidence relating to procedures followed by defendant in the performance of routine maintenance on its roads. Plaintiff maintains that evidence of this nature is irrelevant to defendant's duty to maintain the intersection on which plaintiff's decedent was allegedly injured. Moreover, plaintiff claims that such evidence, including the costs of performing certain maintenance activities, is irrelevant under the facts which have been alleged in the instant case, especially in view of plaintiff's claim that one of defendant's employees was present at the intersection in question shortly before the alleged accident and "failed to cut the brush in front of the stop sign."

Finally, plaintiff argues that the prejudicial impact of any such evidence outweighs probative value, and, therefore, it is inadmissible under Federal Rule of Evidence 403. Plaintiff contends that the message implicit in defendant's proffered evidence is that defendant would be unable to pay a substantial judgment rendered against it by the jury.

Defendant argues that under Michigan law evidence that it lacked sufficient funds to do more than was done under the circumstances of this case is highly relevant on the issue of whether defendant met its statutory duty to keep roads in "reasonable repair" and in a "reasonably safe condition." *See* M.C.L.A. §§ 224.21, 257.610.

In *Grawey v. Board of Road Com'rs of the County of Genesee,* 48 Mich.App. 742, 211 N.W.2d 68 (1973), the Michigan Court of Appeals gave implicit support to the proposition, recognized in several other jurisdictions, that the defense of lack of funds may be raised to an action for failure to keep a roadway in reasonable repair. The only other recent Michigan case to address this question is *Sable v. City of Detroit,* 1 Mich.App. 87, 91, 134 N.W.2d 375 (1965), where a municipal defendant sought to admit evidence of the procedures it followed

in routine maintenance of its streets in an action for personal injuries caused by a defective street. The plaintiff's action was brought under M.C.L.A. § 242.1 (repealed 1965) which provided that if a defect in a roadway existed for more than 30 days, it would be presumed that the municipality had notice thereof and "a reasonable time in which to repair the same." The court held that the evidence was properly excluded as irrelevant. 1 Mich.App. at 91, 134 N.W.2d 375. However, defendant was apparently offering it to show that defendant lacked notice of the defect.

The instant action is brought pursuant to M.C.L.A. §§ 224.21, 257.610, which provide that the defendant has a duty to keep roadways in "reasonable repair" and in a "reasonably safe condition," and the "lack of funds" evidence is offered to show that the defendants conduct was reasonable under the circumstances. Defendant maintains that the size of its crews have been "significantly reduced over the past several years," and that this problem has been "exacerbated by the rising costs of road maintenance." In view of these circumstances, argues defendant, it has been required to use its discretion in applying its limited funds and manpower.

■ I am convinced that the defendant should be permitted to introduce evidence that it lacked sufficient funds and was thereby compelled to use its discretion in applying the funds which it did have to intersections within the County of Ionia, in the order of those which were most in need of maintenance and repair. Indeed, there is authority for the proposition that evidence of this nature is relevant with respect to the reasonableness of the conduct of a municipality in repairing its roadways, see Moon v. City of Ionia, 81 Mich. 635, 645–46, 46 N.W. 25 (1890); Lombar v. East Tawas, 86 Mich. 14, 22 and 23, 48 N.W. 947 (1891), and I intend to permit defendants to present evidence on this defense, assuming that a proper foundation is laid during the trial.

The parties should understand that the lack of funds defense applies not to the funds available to the Board of County Road Commissioners, but rather to the funds available to the county. M.C.L.A. § 224.21 establishes "the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads . . . ." (Emphasis added.) M.C.L.A. § 224.-20 requires the county to "raise a sufficient tax to keep any county roads . . . already built in reasonable repair" subject to certain ceilings which are in turn subject to exceptions contained in M.C.L.A. §§ 224.-20a and b.

The county cannot, without risk of liability, avoid its statutory duty of providing reasonably maintained roads by refusing to properly fund road maintenance activities of the County Road Commission. Cf. Grand Rapids v. Wyman, 46 Mich. 516, 517, 9 N.W. 833 (1881). ("The statute having imposed the duty of repair and liability for neglect, the city at its peril must do whatever is needful to protect itself against actions for injury.") (Per Cooley, J.) Thus, it is only the county's decisions as to funding that may be justified in terms of lack of funds. To hold otherwise, that is to permit the Road Commission to argue it has no liability for dangerous road conditions since it exercised due care in pleading unsuccessfully to the county for needed road funds, would defeat the impact of the state statute. (M.C.L.A. § 224.21, quoted above.) Such a result would be unconscionable.

Plaintiff next contends that if defendant is permitted to introduce evidence of "feasibility" with respect to its alleged failure to properly mark the intersection in question, then plaintiff should be allowed to introduce, for purposes of rebuttal, evidence of "subsequent remedial repair." Plaintiff intends to offer evidence that following the accident, defendant removed brush from in front of the stop sign, and installed a "stop ahead" sign. In addition, plaintiff intends to introduce evidence of the actual cost of the subsequent remedial measures. Defendant merely argues that the evidence is

inadmissible under Rule 407 of the Federal Rules of Evidence.

Rule 407 of the Federal Rules of Evidence provides:

"When, after an event, measures are taken which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, feasibility of precautionary measures, if controverted, or impeachment."

Although "subsequent remedial repair" evidence is not admissible to show what the defendant "should have done" in the first place, Fed.R.Evid. 407 does not require that such evidence be excluded when offered for certain particular purposes, including proof of the feasibility of precautionary measures. *See Werner v. Upjohn Co.*, 628 F.2d 848 at 853 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1980). However, as required by the rule, the question of the feasibility of precautionary measures must be "controverted" before evidence of subsequent remedial measures can be admitted.

■ Courts have held that subsequent remedial repair evidence is admissible when the defendant argues that the costs of the precaution in question were uneconomical. *Hoppe v. Midwest Conveyor*, 485 F.2d 1196, 1202 (8th Cir.1973). However, I am not persuaded, at this juncture, that evidence of actions allegedly taken by defendant following the accident should be admitted under the "feasibility" exception to Rule 407. In the first place, it appears to me that plaintiff is, in fact, offering this evidence to show that the defendant should have cut the brush in front of the stop sign and erected a "stop ahead" sign in order to have fulfilled its duty to keep roadways in reasonable repair. Moreover, defendant is not necessarily arguing that it was not feasible to have cleared the brush or erected the sign at this particular intersection.

Rather, defendant's defense appears to be that it exercised reasonable care in view of its established procedures and resources. In any event, I intend to defer a ruling on plaintiff's proffered evidence until the close of defendant's case in view of the fact that the evidence is clearly not admissible in the plaintiff's case-in-chief. *See Grawey v. Board of Road Com'rs of the County of Genesee, supra.* At that point, I will be better able to evaluate the actual nature of defendant's defense and the impact of its proofs.

Plaintiff also argues that the message implicit in the defendant's so-called "lack of funds" defense is that defendant would be unable to pay a substantial judgment rendered against it by the jury. To rebut such an inference, plaintiff maintains that she should be allowed to introduce evidence that defendant has liability insurance. Defendant argues that evidence of its liability insurance is prohibited by Fed.R.Evid. 411, and that its probative value is outweighed by its prejudicial impact, pursuant to Fed.R.Evid. 403.

Rule 411 of the Federal Rules of Evidence provides:

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency ownership, or control, or bias or prejudice of a witness."

Rule 411 excludes evidence that a party is covered by liability insurance when offered to show that the insured acted "negligently or otherwise wrongfully." 23 Wright & Miller, *Federal Practice and Procedure*, § 5364 at 448–49 (1st ed. 1980). The list of exceptions to Rule 411 is not exclusive but "illustrates those exceptions which courts have generally held as admissible to prove a fact relevant to a material issue other than negligence." 40 A.L.R.Fed. 541, 553 § 5(c).

■ As with plaintiff's evidence of subsequent remedial repair, I shall defer a

ruling on plaintiff's proffered evidence that defendant has liability insurance, until after the close of defendant's case-in-chief. I am not persuaded that defendant's proposed defense that it had limited resources and was therefore required to use discretion in determining which intersections were most in need of maintenance "opens the door" for plaintiff's introduction of liability insurance. Defendant should keep in mind, however, that should the nature of defendant's proofs be such that the jury might infer defendant's inability to pay a judgment, evidence that defendant has liability insurance may become admissible as an exception to the general prohibition of insurance evidence contained in Fed.R. Evid. 411.

## III. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In its opinion and order of December 11, 1982, the court granted Donna Bernier, Personal Representative of the Estate of Michael Moon, deceased, leave to intervene in her individual capacity. Thereafter, Donna Bernier filed her "Intervenor's Complaint," wherein she made the following allegations: "3. Fairly contemporaneously after Michael Moon was caused to suffer a wrongful death, the Intervening Plaintiff learned of the collision and her son's resulting death." The intervening complaint further alleges that as a result of learning of her son's wrongful death, Donna Bernier was "caused to suffer and has continued to suffer emotional distress, mental anguish, grief, and resulting physical manifestations and symptoms, including but not limited to, sleeplessness, loss of appetite, an inability to enjoy and perform the usual and customary day to day affairs of normal living ..." Defendant now contends that under current Michigan law, Donna Bernier has failed to state a claim against it for negligent infliction of emotional distress.

In *Williams v. Citizens Mutual Insurance Company of America*, 94 Mich.App. 762, 290 N.W.2d 76 (1980), the Michigan Court of Appeals addressed a claim for negligent infliction of emotional distress,

concluding that recovery could not be had "since plaintiff did not see the accident occur or view a body within minutes of the accident." The court recited the Michigan rule which provides that:

> "a plaintiff may recover for mental disturbance resulting in physical harm when an immediate family member is injured or exposed to injury by a negligent tortfeasor if the plaintiff is present at the time of the accident or peril or the shock is fairly contemporaneous with it. The plaintiff, however, cannot recover when he is informed of the matter at a later date. *See Gustafson v. Faris*, 67 Mich.App. 363 [241 N.W.2d 208] (1976); *Perlmutter v. Whitney*, 60 Mich.App. 268 [230 N.W.2d 390] (1975)."

94 Mich.App. at 764, 290 N.W.2d 76. With respect to the standard to be used in determining whether emotional shock is "fairly contemporaneous" with the injury or accident, the Michigan Court of Appeals has approved the following rule:

> "In determining what the term 'fairly contemporaneous' means, guidance is found in the decisions of a sister state wherein the standard has been previously applied. In *Powers v. Sissoev*, 39 Cal App 3d 865; 114 Cal Rptr 868 (1974) the Court of Appeals for California held that a mother could not recover for emotional distress which resulted in seeing her daughter some 30 to 60 minutes after the occurrence of an accident. The Court reasoned that the circumstances under which the mother saw her child were not materially different from the circumstances undergone by virtually all parents whose children have been injured in accidents which the parents did not witness. In the earlier case of *Archibald v. Braverman*, 275 Cal App 2d 253; 79 Cal Rptr 723 (1964), the California Court of Appeals held that a mother who viewed her son's injuries from an explosion within moments after the allegedly negligent accident occurred had a cause of action for emotional distress and resulting physical injury in spite of the fact that she did not witness the actual incident."

*Gustafson v. Faris,* 67 Mich.App. 363, 368, 369–70, 241 N.W.2d 208 (1976).

█ In the instant case, it is undisputed that a period of at least two hours elapsed between the accident and the moment when Donna Bernier was informed of the accident and her son's death. I find that under Michigan law, as set forth in *Gustafson* and *Williams, supra,* Donna Bernier has failed to state a claim on which relief may be granted for negligent infliction of emotional distress against the defendant. Accordingly, Count I of the "Intervenor's Complaint" is hereby dismissed.

Count II of the intervening plaintiff's complaint avers that Donna Bernier is "the sole heir at law and is the next of kin of Michael Moon, Deceased." Citing the Michigan Wrongful Death Act, M.C.L.A. § 600.2922(2), the intervening plaintiff claims that she is the person "in whose benefit the underlying principal wrongful death claim has been commenced." Moreover, the intervening plaintiff alleges that as a result of the defendant's negligence, she has been caused to suffer, among other things, the loss of her son's companionship. She requests that the court declare her rights to participate in the proceeds of any judgment or settlement ultimately rendered in favor of the "principal plaintiff."

The Michigan Wrongful Death Act, M.C.L.A. § 600.2922, provides that "[a]ll actions for ... [wrongful] death or injuries resulting in death, shall be brought only under this section. M.C.L.A. § 600.2922(1). In section 600.2922(2), the Act provides in part:

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, may be entitled to * * * under all of the circumstances to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased. Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate."

█ In view of the Act's specific directive that actions for wrongful death be brought "by and in the names of the personal representatives of such deceased person ...," I find that it is not necessary for Donna Bernier to pursue an action against defendant as an intervening plaintiff in order to protect her own right to recover damages for loss of the companionship of her son. Her interests in this regard are protected by the statutory scheme contained in section 2922(2) of the Act. Accordingly, for the reasons stated, Count II of the "Intervenor's Complaint" is dismissed.

## IV. EXEMPLARY DAMAGES

Plaintiff seeks exemplary damages based on her allegation that

"[a]s a proximate result of the Defendant County's misconduct and/or recklessness ... the Plaintiff has been caused to suffer a sense of outrage, indignity, and injured feelings, some or all of which may continue into the unknown and indefinite future."

Plaintiff argues that Michigan recognizes recovery in the form of exemplary damages in tort cases involving a defendant's "wilful or wanton misconduct or a reckless disregard of a plaintiff's rights." It is defendant's position that plaintiff is not entitled to exemplary damages in the event that defendant is found liable, but is limited to recovering the damages specifically enumerated in the Michigan Wrongful Death Act, M.C.L.A. § 600.2922.

In *Currie v. Fiting*, 375 Mich. 440, 456, 134 N.W.2d 611 (1965), the Michigan Supreme Court held that exemplary damages are not recoverable in a wrongful death action, in view of the fact that there is no provision in the statute for an award of exemplary damages. Plaintiff argues that *Currie* has been implicitly overruled by the subsequent holding in *McNitt v. Citco Drilling Company*, 60 Mich.App. 81, 230 N.W.2d 318 (1975), *aff'd*, 397 Mich. 384, 245 N.W.2d 18 (1976), which defined the relationship of the Michigan Survival Act, M.C.L.A. § 600.2921, to the Wrongful Death Act, M.C.L.A. § 600.2922. In *McNitt*, the court held that:

> "the personal representative of a deceased who asserts a cause of action on behalf of a deceased stands in the deceased's place for all purposes incident to the enforcement of that claim, including rights and privileges personal to the deceased in his lifetime."

60 Mich.App. at 87–88, 230 N.W.2d 318.

While this is a correct statement of the holding in *McNitt, supra,* I am not persuaded that the above-quoted language overrules the holding in *Currie, supra,* 375 Mich. at 456, 134 N.W.2d 611, that exemplary damages are not recoverable in an action brought by the personal representative of the deceased pursuant to the Wrongful Death Act, § 600.2922. Indeed, the Michigan Supreme Court recently held that an action for wrongful death "exists not as 'a cause of action which survives' the decedent, but as 'a new action ... which can be brought not for the benefit of the estate, but solely for the benefit of the beneficiaries named in the statute.'" *Endykiewicz v. State Highway Commission*, 414 Mich. 377, 324 N.W.2d 755, 760 (1982). The court further held that "the wrongful death act stands as the exclusive remedy for injuries resulting in death." 414 Mich. at 387, 324 N.W.2d at 760.

■ In view of the fact that the Wrongful Death Act contains no provision for recovery for exemplary damages, I am satisfied that plaintiff is not entitled to recover such damages should she ultimately prevail in her action against defendant.

Accordingly, for the reasons stated, plaintiff's prayer for exemplary damages is hereby dismissed.

## CONCLUSION

Accordingly, for the reasons stated, the court rules as follows:

1. Plaintiff's motion for partial summary judgment is denied;

2. With respect to the motions in limine:

(a) defendant will be permitted to introduce evidence that it lacked sufficient funds and was therefore compelled to use its discretion in applying the funds which it did have to intersections in Ionia in the order of the most in need of maintenance and repair;

(b) I am not persuaded, at this juncture, that evidence of actions allegedly taken by defendant following the accident should be admitted under the "feasibility" exception to Fed.R.Evid. 407. However, a ruling on plaintiff's proffered evidence is deferred until the close of defendant's case;

(c) A ruling on plaintiff's proffered evidence that defendant has liability insurance is also deferred until after the close of defendant's case.

3. In view of the fact that Donna Bernier, as "intervening plaintiff," has failed to state a claim on which relief may be granted against defendant for negligent infliction of emotional distress, Count I of the intervening complaint is hereby dismissed. Furthermore, in view of the fact that Donna Bernier's right to recover damages for the loss of the companionship of her son are protected by section 600.2922(2) of the Wrongful Death Act, Count II of the intervening plaintiff's complaint is hereby dismissed.

4. In view of the fact that the Michigan Wrongful Death Act, M.C.L.A. § 600.2922, contains no provision for recover of exemplary damages, plaintiff's prayer for exemplary damages is hereby dismissed.

IT IS SO ORDERED.