McNITT v CITCO DRILLING COMPANY

1. EVIDENCE—INVASION OF PRIVACY—BLOOD SAMPLE—UNCONSCIOUS
   PERSONS.
   Evidence obtained through extraction of a blood sample from an
   unconscious person where no criminal prosecution is involved
   and which was not taken for the purpose of treatment is an
   unconstitutional invasion of the right of privacy and is inadmis-
   sible in a civil action under the wrongful death act (Const 1963,
   art 1, § 11).

2. APPEAL AND ERROR—COURTS—SUPREME COURT—PRECEDENT—
   COURT OF APPEALS—POWERS.
   It is within the power of the Court of Appeals to distinguish
   between Supreme Court opinions which are distinguishable, to
   choose between conflicting holdings where there is irreconcila-
   ble conflict, and to write to questions of first impression, but
   the Court of Appeals is powerless to overrule or disregard a
   Supreme Court precedent which is uncontradicted and directly
   on point.

3. STATUTES—DRUNKENNESS—IMPLIED CONSENT—MOTOR VEHICLES—
   CRIMINAL ACTION—CIVIL ACTION—WRONGFUL DEATH.
   The statute which implies consent to chemical tests in drunken
   or impaired driving situations is applicable only for the pur-
   poses of that criminal act and not in a civil action for wrongful
   death (MCLA 257.625[c]).

4. STATES—SOVEREIGNTY—GATHERING OF EVIDENCE—CIVIL LITIGANTS.
   The power of the sovereignty to gather evidence for a potential

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 332–
   334.
   29 Am Jur 2d, Evidence § 830.
   30 Am Jur 2d, Evidence § 1104.
   62 Am Jur 2d, Privacy § 42.
   Right of privacy. 14 ALR2d 750.
[2] 5 Am Jur 2d, Appeal and Error §§ 768, 1051.
[4] No Reference.
[5] 31 Am Jur 2d, Executors and Administrators § 4.

criminal charge should not be used to aid one or another of two civil litigants.

5. Executors and Administrators—Death—Subrogation of Rights —Blood-Test Results—Consent—Standing to Object.

 The personal representative of a deceased who asserts a cause of action on behalf of a deceased stands in the deceased's place for all purposes incident to the enforcement of that claim, including rights and privileges personal to the deceased in his lifetime, and, therefore, an administrator has standing to object to the admission of blood-test results taken from his decedent without consent.

Appeal from Wexford, William R. Peterson, J. Submitted Division 3 January 14, 1975, at Grand Rapids. (Docket No. 20272.) Decided March 25, 1975. Leave to appeal granted, 394 Mich 818.

Complaint by William E. McNitt, administrator of the estate of Terry E. McNitt, against Citco Drilling Company and Jeffrey M. Leseth for wrongful death. From an order suppressing evidence, defendants appeal by leave granted. Affirmed.

*Korn & Burns, P. C.,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for defendants.

Before: Allen, P. J., and N. J. Kaufman and O'Hara,* JJ.

O'Hara, J. This is an appeal upon leave granted from an interlocutory order of the trial judge holding inadmissible the results of a blood test for alcoholic content of decedent's blood in this civil action by decedent's personal representative

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

against the owner and driver of the other vehicle involved in this fatal accident.

Decedent McNitt died of injuries sustained in the collision. He was rendered unconscious at the time of the impact and never regained consciousness.

The blood sample was taken while he was unconscious. No color of consent express or implied (or vicariously, if such can be obtained) was given. There is no claim that the blood sample was taken in connection with the treatment of decedent's injuries.

It is seldom in the exercise of the function of an intermediate appellate court that a case by the court of ultimate jurisdiction is so completely "on all fours" (as the phrase of art denominates it) as this case and *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958).

If the names of the parties were changed, and had decedent in this case survived, there is absolutely no way of distinguishing the legal holding.

Obviously, the fact of survival does not affect the legal holding in *Lebel.* It would be the grossest legal sophistry even to attempt to distinguish them. The identicalness of the fact situation is almost diagrammatic.

(a) Swincicki was unconscious at the time the sample was taken.

(a-1) McNitt was unconscious at the time the sample was taken.

(b) There is no testimony that the sample was taken in connection with the treatment of Swincicki.

(b-1) There is no testimony that the sample was taken in connection with the treatment of McNitt.

(c) There was no criminal prosecution involved in *Swincicki.*

(c-1) There is no criminal prosecution here involved.

The Supreme Court then states the issue:

"The question is presented, in consequence, whether the obtaining of testimony in violation of the constitutional provision in question (art 2, § 10)[1] renders it inadmissible in a civil action. That the blood sample was taken in the case at bar in violation of defendant's right of security of his person is apparent. He was unconscious at the time but that fact did not permit others to invade his personal rights. We see no difference in principle between obtaining a blood sample under the circumstances here involved and taking it from a conscious person by force." 354 Mich at 437–438.

*  *  *

"In the instant case the trial judge was in error in overruling the objections made by counsel for defendant." 354 Mich at 441.

In the case at bar the trial judge was right in sustaining it.

Mayhap, as able counsel for appellants vigorously urged, the time has come to reexamine the rationale of *Lebel,* to distinguish it in light of other and later decisions of the United States Supreme Court[2] and the holdings of courts of our sister states. This argument by the nature of our court system must be addressed to the Supreme Court, if they choose to review our holding here.

We do not by our holding here suggest we are powerless to distinguish Supreme Court opinions that are distinguishable. Where there is irreconcilable conflict we can choose between conflicting

[1] The provision in art 2, § 10 of the 1908 Constitution is substantially identical with art 1, § 11 of the 1963 Constitution.

[2] In particular defendants cite *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

holdings. We are at liberty to write to questions of first impression.

In the case at bar we have none of these options. *Lebel* is there. It says what it says. We are powerless to overrule it or disregard it. It controls. The order of the trial judge denying admission of the results of the blood test is affirmed.

We have not disregarded appellants' argument that Michigan's "implied consent law"[3] as to chemical tests in drunken or impaired driving situations applies in the instant case. That statute gives implied consent for the purpose of that act. It certainly did not give implied consent to or waiver of all a citizen's constitutional protections. The reliance on that statute is misplaced.

Nor are we unaware that *Lebel* was not reversed because of the error in admitting the results of the test. This holding in no way diluted the erroneous character of the admission. In *Lebel,* Swincicki survived, took the witness stand and there was a plethora of other testimony as to his intoxication.

As the Court observed in closing:

"In any event, there was no chance for question as to his negligence, and the results of the blood test could scarcely be given the effect of tending to show a fact that had not already been established beyond question." 354 Mich at 441.

We, of course, have no way of knowing what proofs relating to decedent's alleged intoxication may be adduced. We are here concerned with one question only, the admissibility of the results of *this* blood test, in *this* case.

However, to all of the foregoing, say defendants, even though *Lebel* controls the issue of admissibil-

---

[3] MCLA 257.625(c); MSA 9.2325(3).

ity it does not control the question of *standing* to raise the issue.

We are compelled to agree.

No Michigan case squarely in point has been cited by either party. Diligent independent research has uncovered none. We must treat the question as one of first impression.

Both parties have marshalled strong arguments. Many cases from other states and Federal courts have been cited to us.

In capsulized form defendants-appellants claim the right to object is personal to the party asserting it. The right does not descend to the personal representative, heirs, next of kin or anyone else. The privilege died with decedent. They further argue the evidence sought to be introduced is certainly material and relevant to the issues in the civil suit. Why should its evidentiary value be denied in what is supposed to be a truth seeking process?

Answers the plaintiff, because when the common law doctrine relating to actions for wrongful death was repudiated, the creation of the cause of action implicitly carried with it all the procedural incidents attendant to enforcing it. There are infinite variations with respect to Lord Campbell's Act. Hence, we are placed in the position of having to construe only our own statute.

It is not an easy choice. Candor compels us to say we are disturbed by a factor in this case that perhaps has no place in the strict analysis of the statute itself. It is not disputed that the blood sample was taken at the request of the Michigan State Police. To the doctor and nurses the request had, at least, the color of official authority. We cannot help but speculate whether the sample

would have been given to a lay person acting on behalf of either defendant.

It is one thing for a police officer to gather evidence for a potential criminal charge and retain it for that purpose. It is quite another for the awesome power of the sovereignty to acquire evidentiary matter that becomes part of the case of one or another of two civil litigants. The whole idea generates an uneasiness that borders on offensiveness.

Be that as it may it cannot spare us the obligation of construing the statutes on the clear legal issue of *standing.*

The relevant parts of the involved statutes provide as follows:

"*All actions and claims survive death.* Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death." (Emphasis added.) MCLA 600.2921; MSA 27A.2921.

and

"Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death,

shall be brought only under this section." MCLA 600.2922; MSA 27A.2922.

We read the foregoing to mean that the personal representative of a deceased who asserts a cause of action on behalf of a deceased stands in the deceased's place for all purposes *incident to the enforcement of that claim, including rights and privileges personal to the deceased in his lifetime.*

It would seem to us anomalous, at least, to hold that under the quoted sections of our statutes and the holding in *Lebel,* Swincicki was afforded protection against the admission of the illegally obtained blood sample, because he survived the accident, while McNitt is denied it because he died before his claim could be litigated.

It follows then that McNitt's administrator had standing to object to the admission of blood test results.

For the reasons herein specified we affirm the trial judge.

The case is remanded to the circuit court for such further proceedings as may properly ensue.

Costs to the appellee.