McNITT v CITCO DRILLING COMPANY

GILBERT v LEACH

Docket Nos. 56871, 57375. Argued March 3, 1976 (Calendar Nos. 1, 2). —Decided August 26, 1976.

The admissibility of the result of a blood alcohol test in civil litigation is the common issue in these appeals.

William E. McNitt, administrator of the estate of Terry E. McNitt, deceased, brought an action for wrongful death against Citco Drilling Company and Jeffrey M. Leseth in Wexford Circuit Court, William R. Peterson, J. The results of a test of a blood sample taken from the decedent without his consent while he was unconscious were suppressed. The Court of Appeals, Allen, P. J., and N. J. Kaufman and O'Hara, JJ., affirmed (Docket No. 20272). Defendants appeal.

Thomas M. Gilbert, administrator of the estate of Frank R. Gilbert, deceased, brought an action for wrongful death against Kenneth G. Leach and Russell L. Leach in Cheboygan Circuit Court, Joseph P. Swallow, J. The results of a test of a blood sample taken from defendant Kenneth Leach were suppressed after the trial judge found that the defendant did not consent. The Court of Appeals, Bashara, P. J., and J. H. Gillis and M. F. Cavanagh, JJ., affirmed (Docket No. 22026). Plaintiff appeals. *Held:*

1. Where a blood alcohol test is administered pursuant to the "implied consent law", MCL 257.625a; MSA 9.2325(1), the test result is not admissible in civil litigation. The statute limits the authority of police officers to request the taking of blood and limits the use that may be made of the test result.

2. No blood alcohol test may be given to a person who refuses consent under the "implied consent law", MCL 257.625d; MSA 9.2325(4); under the statute the issue is not viewed in the context of search and seizure, but solely in terms of consent.

REFERENCES FOR POINTS IN HEADNOTES

[1-8] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 332-334.
  21 Am Jur 2d, Criminal Law §§ 357, 365, 366.
  68 Am Jur 2d, Searches and Seizures §§ 29, 105.

Consent determines to what extent the result of the test administered under the statute can be used. Whether or not consent is constitutionally required, the Legislature may limit the right of police officers and others to take blood from allegedly drunken drivers and may decide that revocation of a driver's license for unreasonable refusal to consent appropriately protects the public interest.

3. McNitt is not precluded from showing at trial, however, that the officer was exercising an asserted common-law right to cause a blood alcohol test to be administered. Upon such a showing the question whether the statute supersedes the asserted common-law right would be properly presented for resolution.

The decision of the Court of Appeals is affirmed. The cases are remanded for trial.

Justice Lindemer, with Justices Coleman and Ryan concurring, dissented: The prohibition on the use of blood chemical tests when consent is refused refers to criminal actions and motor vehicle license revocation hearings, and is not pertinent here. The taking of a driver's blood and use of chemical test results in a civil action has been held by the United States Supreme Court not to be a violation of the Fourth Amendment prohibition of unreasonable searches and seizures even in the absence of consent, and the ruling by the Supreme Court of Michigan that it violates the state Constitution can no longer be maintained, to the extent that it would exclude admission of blood-alcohol analyses in civil cases. The question is not one of the constitutionally protected freedom from self-incrimination; it is one of the reasonableness of the search and seizure. The deterrent function of the exclusionary rule has already been served because no criminal prosecution could use the evidence. Scientific methods for determining the degree of intoxication assist the fact-finding process in achieving greater certainty and the results should be admissible. To exclude evidence of blood alcohol analyses in civil cases should require a showing that the sample was obtained by some means shocking to the conscience or offensive to the sense of justice. The taking of blood tests in these cases cannot be said to be unreasonable under all of the circumstances for the purposes of subsequent use in connection with these civil actions.

60 Mich App 81; 230 NW2d 318 (1975) affirmed.

62 Mich App 722; 233 NW2d 840 (1975) affirmed.

Opinion of the Court

1. Evidence—Blood Alcohol Test—Implied Consent.

The result of a blood alcohol test which is administered pursuant to the "implied consent law" is not admissible in civil litigation (MCL 257.625a *et seq.;* MSA 9.2325[1] *et seq.).*

2. Automobiles—Intoxicating Liquors—Blood Alcohol Test—Implied Consent—Constitutional Law—Searches and Seizures.

The Legislature has limited the right of police officers and others to take blood from allegedly intoxicated drivers to test for alcohol content even if the driver's consent is not constitutionally required; the Legislature may decide that revocation of a driver's license for unreasonable refusal to consent appropriately protects the public interest in enforcement of drunk driving laws (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

3. Automobiles—Intoxicating Liquors—Evidence—Blood Alcohol Test—Implied Consent—Searches and Seizures.

No blood alcohol test shall be given to a person charged with driving under the influence of intoxicating liquor who refuses to consent; under the "implied consent law", the issue is not the constitutionality of a search and seizure but whether there has been a consent under the statute and the consent given determines to what extent the results of the test are admissible as evidence (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

4. Automobiles—Intoxicating Liquors—Blood Alcohol Test—Implied Consent.

Blood alcohol test results obtained pursuant to statutory authority are not admissible unless obtained in conformity with the requirements of the statute (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

5. Automobiles—Intoxicating Liquors—Blood Alcohol Test—Implied Consent—Consent.

A driver under the "implied consent law" has a choice whether to submit to a blood alcohol test; if he does not submit, this evidence of his condition shall not be extracted from him (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

Dissenting Opinion

Coleman, Lindemer, and Ryan, JJ.

6. Automobiles—Blood Alcohol Test—Implied Consent—Evidence—Admissibility.

*The prohibition in the implied consent law on giving a blood*

*chemical test for alcohol to a driver without his consent refers to criminal actions and to motor vehicle license revocation hearings, and is not pertinent to the admissibility of a blood chemical test in a civil action (MCL 257.625d; MSA 9.2325[4]).*

7. Automobiles—Searches and Seizures—Blood Alcohol Test—Implied Consent.

*The United States Supreme Court has held that the Fourth Amendment is not violated by the extraction of blood from an apparently drunken driver and the admission into evidence in a prosecution for drunk driving of the results of a chemical test of the blood without the driver's consent, and an opinion of the Supreme Court of Michigan that it violates the substantially identical provision of the state Constitution can no longer be maintained to the extent that it would exclude admission of blood-alcohol analyses in civil cases (US Const, Am IV; Const 1963, art 1, § 11).*

8. Automobiles—Searches and Seizures—Blood Alcohol Test—Evidence.

*Exclusion of evidence of blood alcohol analyses in civil cases as violating the Fourth Amendment prohibition against unreasonable searches and seizures should require a showing that the sample was obtained by some means shocking to the conscience or offensive to the sense of justice; acquiring any evidence by such offensive methods should not be condoned by the judicial system (US Const, Am IV; Const 1963, art 1, § 11).*

*Korn & Burns, P. C.,* for plaintiff McNitt.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel) for defendants Citco Drilling Co and Leseth.

*Patrick & Hackett, P. C.,* for plaintiff Gilbert.

*Collison & Fordney, P. C.,* for defendants Leach.

Levin, J. In *People v Keen,* 396 Mich 573, 575; 242 NW2d 405 (1976), we held that "where a blood alcohol test is administered pursuant to the statute the test result is not admissible in a criminal

prosecution other than for driving while under the influence of intoxicating liquor (DUIL) or for driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (DI)".

The common issue in these appeals concerns the admissibility of the result of a blood alcohol test in civil litigation, specifically actions for wrongful death commenced by the administrator of the estate of the allegedly drunken driver in *McNitt* and against the allegedly drunken driver in *Gilbert.*

We hold the results of tests administered pursuant to the statute cannot be used in civil litigation.[1]

I

As in *Keen,* we see no need to decide this case on constitutional grounds because "[e]ven if we were to conclude, on reconsideration of *Lebel [v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958)], that the drawing of blood from an apparently drunken driver does not violate his rights under the Michigan Constitution, the statute limits the authority of police officers to request the taking of blood and limits the use that may be made of a test result obtained pursuant to exercise of that authority". *People v Keen, supra* at 576–577.[2]

---

[1] Our holding is in accord with the conclusions of the Court of Appeals in *McNitt* and *Gilbert:*

"We have not disregarded appellants' argument that Michigan's 'implied consent law' as to chemical tests in drunken or impaired driving situations applies in the instant case. That statute gives implied consent for the purpose of that act." *McNitt v Citco Drilling Co,* 60 Mich App 81, 85; 230 NW2d 318 (1975).

"[W]e conclude that the trial court properly excluded the evidence because of the invalidity of any alleged consent." *Gilbert v Leach,* 62 Mich App 722; 233 NW2d 840 (1975).

[2] *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958), held that

The Michigan Vehicle Code makes admissible in DUIL prosecutions the result of a blood alcohol test.[3]

It is further provided that a person who operates a motor vehicle "is deemed to have given consent" to a blood alcohol test if he is "arrested while driving under the influence of intoxicating liquor or while his ability to operate a vehicle has been impaired due to the consumption of intoxicating liquor".[4]

It is also provided, however, that "[a] person under arrest shall be advised of his right to refuse to submit to chemical tests; and if he refuses the request of a law enforcement officer to submit to chemical tests, no test shall be given".[5] If the driver refuses to take a test, the Secretary of State may suspend, revoke or deny issuance of a driving license.[6]

In *Keen,* this Court said:

"Even though the taking of an automobile driver's blood without consent does not violate the Federal Constitution and even if on reconsideration of *Lebel* we were to conclude that it did not violate the Michigan

---

the result of a blood alcohol test, based on a blood sample taken from an unconscious driver, was inadmissible in a civil action as the Michigan constitutional provision securing persons from unreasonable searches and seizures (Const 1908, art 2, § 10 [now Const 1963, art 1, § 11]) precludes the drawing of blood without consent. The Court, citing *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957), said that the result of such a test would be inadmissible in a Federal prosecution. In *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), the United States Supreme Court concluded that Federal constitutional guarantees had not been violated by the extraction of blood without consent from an apparently drunken driver and the admission in evidence in a drunk driving prosecution of the result of a chemical test of his blood.

[3] MCLA 257.625a; MSA 9.2325(1).

[4] MCLA 257.625c; MSA 9.2325(3).

[5] MCLA 257.625d; MSA 9.2325(4).

[6] MCLA 257.625f; MSA 9.2325(6).

Constitution, it would still be within the legislative prerogative to limit the right of police officers and others to take blood from allegedly drunken drivers. Whether consent is or is not constitutionally required, the Legislature may decide that the interest in enforcement of the drunk driving laws does not justify subjecting unconsenting drivers to blood alcohol tests—imposition of the sanction of revocation of driver's license for unreasonable refusal to consent to a test appropriately protects the public interest."[7]

## II

In *McNitt,* the driver, who was unconscious, did not consent.

In *Gilbert,* the trial judge found, after an evidentiary hearing, that the driver did not consent.

While the relevant provisions of the Michigan Vehicle Code are sometimes called the "implied consent law" and it is provided that a person who operates a motor vehicle "is deemed to have given consent" to a blood alcohol test, it is also provided that "no test shall be given" to a person who refuses to consent. As the trial judge in *McNitt* declared, under the statute the issue "is not to be viewed in the ordinary search and seizure context, but solely in terms of consent".

The contention of the defendant in *McNitt* that statutory authority is not needed to authorize the administration of blood alcohol tests or to make test results admissible in evidence elides the fact that but for the statute the tests probably would not have been administered by the hospital personnel.

In both *Gilbert*[8] and *McNitt* the blood sample

---

[7] *See People v Keen,* 396 Mich 573, 580–581, fn 12; 242 NW2d 405 (1976).

[8] Some blood was taken for diagnostic purposes but the judge found that another sample was taken at the request of a police officer and,

was taken at the request of a police officer to determine alcohol content and not for diagnostic purposes.

There is no suggestion that the hospitals would have allowed their personnel to draw blood for determination of alcohol content without a "request of a police officer" or that they would have allowed this to be done if they did not have the resulting statutory protection from civil and criminal liability.[9]

In administering the tests, the hospital personnel appear to have acted on the requests of police officers pursuant to the statute.

It has not been established that, as claimed by the defendant in *McNitt*, the officer, in requesting that a test be administered, was exercising an asserted common-law right to cause a blood alcohol test to be administered.

We do not preclude a showing at trial that the

---

although hospital personnel claimed consent had been given, that the sample taken at the request of the officer was without the defendant's consent. The hospital personnel said they would not have performed a blood alcohol test absent a request of an officer. The Court of Appeals stated that the blood sample was taken by the hospital personnel at the request of the police. *Gilbert v Leach,* 62 Mich App 722, 729; 233 NW2d 840 (1975).

[9] "Samples and specimens of urine, breath and saliva shall be taken and collected in a reasonable manner; but only a duly licensed physician, or a licensed nurse or medical technician under the direction of a licensed physician and duly qualified to withdraw blood, acting in a medical environment, *at the request of a police officer,* can withdraw blood for the purpose of determining the alcoholic content therein under the provisions of this act. No liability for a crime or civil damages predicated on the act of withdrawing blood and related procedures attaches to a qualified person who withdraws blood or assists in the withdrawal in accordance with this act unless the withdrawal is performed in a negligent manner." MCLA 257.625a(2); MSA 9.2325(1)(2). (Emphasis added.)

The exculpation from liability is we think triggered by "the request of a police officer". Absent disclaimer by the officer that he is acting under the statute, hospital personnel are protected in relying on such a request as authorization to proceed to administer a test under the statute without independent investigation and determination whether statutory requirements have been observed.

officer in requesting that the hospital personnel administer a test made known to them that he was not making the request pursuant to the statute so that they would be aware that if they administered the test they could not claim the statutory protection from civil and criminal liability. Upon such a showing the question whether the statute occupies the field and supersedes the asserted common-law right would be properly presented and require resolution; absent such a showing, we intimate no opinion on the question.

## III

In *People v Keen, supra,* holding that a blood alcohol test result was not admissible in a prosecution for manslaughter, this Court said:

"In the context of an arrest for 'driving a vehicle while under the influence of intoxicating liquor', advice that results of a consensual test will be used to determine the innocence or guilt of the driver means innocence or guilt of the offense for which the driver was arrested." 396 Mich 583.

If the drivers in *McNitt* and *Gilbert* had been told, as the driver in *Keen* was told, that blood alcohol test results might be admitted in a DUIL prosecution and had, as contended by Gilbert, consented to the administration of such tests, the results could not, for essentially the reason stated in *People v Keen,* have been used against them in civil litigation. The test result would have been obtained on a representation of limited use made by a police officer acting pursuant to a statute providing for limited use. That limitation encourages drivers to consent to the test and assists in the prosecution of those who drive under the

influence of intoxicating liquor or while their ability to drive is impaired due to intoxication.

It would be anomalous to construe the statute to allow a broader use of the results of tests taken under the authority of the statute but not in conformity with its terms than of test results obtained in conformity with statutory requirements.

## IV

Test results obtained pursuant to the exercise of statutory authority are not admissible unless obtained in conformity with the requirements of the statute.[10]

The statute provides that a person under arrest "shall be advised of his right to refuse" a test and "if he refuses" the request "no test shall be given". In *Gilbert* the judge found that the request of the officer was refused. McNitt's state of unconsciousness precluded a request in conformity with the requirements of the statute. The tenor of this statute giving drivers the right to refuse to submit to a test is that "no test shall be given" unless the driver submits to a test.

The meaning of the statutory edict, "no test shall be given", is that the driver has a choice whether to submit to a test;[11] if he does not submit, this evidence of his condition shall not be extracted from him. If, as has been here contended, there is a right to use test results in civil litigation even if the driver does not submit because the test was nevertheless administered, then—the statute to the contrary—the driver has no choice.

---

[10] *Cf. Gallagher v Secretary of State (On Rehearing)*, 59 Mich App 269; 229 NW2d 410 (1975).

[11] *Collins v Secretary of State*, 384 Mich 656, 667; 187 NW2d 423 (1971); *People v Hayes*, 64 Mich App 203, 208; 235 NW2d 182 (1975).

In precluding the use of test results obtained under color of statutory authority but in violation of the terms of the statute, we protect the driver's statutory choice.

We also observe that the language of the statute, "in determining the innocence or guilt of the defendant",[12] is not the language of civil litigation.

A different question might be presented if the test had not been requested by a police officer, but had been administered by hospital personnel for diagnostic purposes.

The test results are not admissible in *Gilbert*[13] or *McNitt*[14] but this does not preclude a showing at trial that the officer eschewed his statutory authority.

We appreciate that drunk drivers are a menace and that strict enforcement of drunk driving laws is in the public interest. The Legislature has, however, limited the authority of police officers to request hospital personnel to withdraw blood or otherwise test for blood alcohol content without consent and has limited the use that may be made of blood alcohol test results obtained pursuant to exercise of that authority.

The Court of Appeals is affirmed. The cases are remanded to the trial courts for trial.

KAVANAGH, C. J., and WILLIAMS and FITZGERALD, JJ., concurred with LEVIN, J.

LINDEMER, J. *(dissenting)*. These cases concern the exclusion of evidence of blood alcohol levels in

---

[12] MCLA 257.625a(3); MSA 9.2325(1)(3).

[13] Our conclusion makes it unnecessary to consider whether the trial judge properly decided the issue of consent.

[14] Since the statute provides for limited use of a test result, the death of the driver after administration of the test does not enlarge the use that may be made of such result.

civil cases. *McNitt v Citco Drilling Co* involves an allegedly intoxicated plaintiff (now deceased) who sought to exclude from evidence the results of a chemical blood test. In *Gilbert v Leach,* an allegedly intoxicated defendant asked the trial court to exclude similar evidence.

Arguably the blood chemical tests in *McNitt* and *Gilbert* were performed in violation of MCLA 257.625d; MSA 9.2325(4). However, the prohibition against the use of the test in § 625d refers to criminal actions and to motor vehicle license revocation hearings, neither of which consideration is pertinent here. See the concurring opinion of Justice COLEMAN in *People v Keen,* 396 Mich 573; 242 NW2d 405 (1976).

The Court of Appeals in both *McNitt* and *Gilbert* held that the evidence of intoxication should be suppressed. In making these decisions the Court of Appeals relied upon a ruling of this Court in *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958). We believe that decision does not control these cases.

The *Lebel* court made much of *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957). Blood taken from an unconscious person had been introduced into evidence during a prosecution for manslaughter in New Mexico. The state supreme court upheld admission. The United States Supreme Court noted that the evidence would be subject to exclusion in Federal courts. The majority, citing *Wolf v Colorado,* 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949), said this exclusionary rule did not automatically apply to a state prosecution for a criminal offense under state law.

The *Lebel* court, noting the similarity between the search and seizure provisions of the Federal

and Michigan Constitutions, said *Breithaupt* was
authority for excluding such evidence in state
criminal prosecutions. The question then became
"whether the obtaining of [a test] in violation of
the constitutional provision * * * renders it inad-
missible in a civil action". Although there was "a
lack of authority bearing directly on the proposi-
tion" the Court thought "testimony based on the
analysis of such blood should not be admitted in
evidence".

*Lebel's* analytical foundation has been under-
mined by *Schmerber v California,* 384 US 757; 86
S Ct 1826; 16 L Ed 2d 908 (1966). The defendant
was arrested for driving under the influence. The
arrest occurred at a hospital where he was being
treated. A blood sample was taken at a police
officer's request. The analysis was admitted at
defendant's trial.

The defendant in *Schmerber* claimed that the
analysis should be excluded as the product of an
unlawful search and seizure. The Court said "the
Fourth Amendment's proper function is to con-
strain, not against all intrusions as such, but
against intrusions which are not justified in the
circumstances or which are made in an improper
manner".

The Court said a warrant was not required. The
officer "might reasonably have believed that he
was confronted with an emergency, in which the
delay necessary to obtain a warrant under the
circumstances" might have resulted in the destruc-
tion of evidence. The Court was satisfied that the
test used to measure blood alcohol level required a
"minimal" quantity of blood and used procedures
"that for most people * * * involves virtually no
risk, trauma or pain". The record also showed
"that the test was performed in a reasonable
manner".

We believe the *Lebel* decision should no longer be followed to the extent that it would exclude admission of blood-alcohol analyses in civil cases. *Lebel* assumed the Fourth Amendment would prohibit admission in Federal court; *Schmerber* has deflated that assumption.

We also believe the rule fashioned by *Lebel*—exclusion of the evidence in a civil case—has been rejected. The United States Supreme Court in *United States v Janis,* — US —; 96 S Ct 3021; 49 L Ed 2d 1046 (1976), discussed

"an issue of the appropriateness of an extension of the judicially created exclusionary rule: is evidence seized by a state criminal law enforcement officer in good faith, but nonetheless unconstitutionally, inadmissible in a civil proceeding by or against the United States?"

Based on information obtained pursuant to a state search warrant, the IRS assessed the respondent for wagering excise taxes. A state court subsequently quashed the warrant saying it was based on illegally obtained evidence. The lower Federal court then quashed the assessment.

The Supreme Court reviewed the history of the exclusionary rule noting that in "the complex and turbulent history of the rule" it had never been applied "to exclude evidence from a civil proceeding, Federal or state". If the exclusionary rule was extended in the manner suggested, "the enforcement of admittedly valid laws would be hampered * * * and, as is nearly always the case with the rule, concededly relevant and reliable evidence would be rendered unavailable".

The deterrent function of the rule had already been served because no criminal prosecution, state or Federal, could use the evidence. The offending

officer was "already 'punished' by the exclusion of the evidence in the state criminal trial". The Court concluded "that exclusion from Federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal cost imposed by the exclusion".

Scientific methods for determining the degree of intoxication based upon the alcohol content of the blood have lifted the fact-finding process from the morass of conjecture into an area in which greater certainty is available. The thrust of the law should encourage such a quest for factual certainty. The question is not one of the constitutionally protected freedom from self-incrimination; rather, it is one of the reasonableness of search and seizure. To exclude evidence of blood alcohol analyses in civil cases, we would require a showing that the sample was obtained by some means shocking to the conscience or offensive to our sense of justice. Acquiring of any evidence by such offensive methods should not be condoned by our judicial system. On that basis, I cannot say that the taking of the blood test in *McNitt* and *Gilbert* was unreasonable under all of the circumstances for the purposes of subsequent use in connection with those civil actions.

Because we have rejected the basis for the decisions below, the Court of Appeals and trial courts should be reversed. This matter should be remanded to permit the parties to proceed in accordance with this opinion.

Coleman and Ryan, JJ., concurred with Lindemer, J.