*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LONG LAKE TOWNSHIP,

Plaintiff-Appellee,

v

TODD MAXON and HEATHER MAXON,

Defendants-Appellants.

FOR PUBLICATION
September 15, 2022
9:15 a.m.

No. 349230
Grand Traverse Circuit Court
LC No. 18-034553-CE

ON REMAND

Before: JANSEN, P.J., GLEICHER, C.J., and RONAYNE KRAUSE, J.

GLEICHER, C.J.

This case is before us on remand from our Supreme Court. In the original action, Todd and Heather Maxon appealed a trial court order denying their motion to suppress aerial photographs taken by Long Lake Township using a drone without the Maxons' permission, a warrant, or any other legal authorization. The township relied on these photos to support a civil action against the Maxons for violating a zoning ordinance, creating a nuisance, and breaching a previous settlement agreement. *Long Lake Twp v Maxon*, 336 Mich App 521, 524-525; 970 NW2d 893 (2021) (*Long Lake I*). This Court determined that the use of the drone violated the Fourth Amendment and reversed the trial court order denying the Maxons' motion to suppress. *Id.* at 525, 542. The Supreme Court vacated our previous opinion and remanded to this Court "to address the additional issue of whether the exclusionary rule applies to this dispute." *Long Lake Twp v Maxon*, ___ Mich ___; 973 NW2d 615 (2022) (*Long Lake II*).

The exclusionary rule does not apply in this civil matter. Accordingly, even if the township violated the Maxons' constitutional rights, suppression was not supported. We affirm the lower court's order.

## I. BACKGROUND

Todd and Heather Maxon own a five-acre parcel in Long Lake Township. In 2007, the township brought a zoning action against Todd Maxon arising from his storage of junk cars on the property. That case settled in 2008 with an agreement that no further zoning action would be

-1-

brought if Todd maintained the status quo—the same number of junked cars. See *Long Lake I*, 336 Mich App at 525.

According to the township, neighboring property owners reported that the Maxons had expanded their junk yard. This allegation could not be confirmed from ground level because buildings and trees obstructed views of the landscape. The township hired Zero Gravity Aerial to take aerial photographs of the Maxons' property with a drone in 2010, 2016, 2017, and 2018. The photographs allegedly show that the dimensions of the Maxons' junkyard had swelled, contrary to the settlement agreement. The township filed a civil action against the Maxons seeking the abatement of the junkyard nuisance. *Id*. at 525-526.

The Maxons moved to suppress the drone photos, invoking the Fourth Amendment. The trial court denied the motion, finding that the drone surveillance was not a search. *Id*. at 526-527. This Court granted the Maxons' application for leave to appeal on a single issue—whether the trial court erred when it held that the warrantless search of the Maxons' property with a drone did not violate their Fourth Amendment rights. *Long Lake Twp v Maxon*, unpublished order of the Court of Appeals, entered October 18, 2019 (Docket No. 349230). We then reversed the trial court's suppression denial, holding that "drone surveillance of this nature intrudes into people's reasonable expectations of privacy, so such surveillance implicates the Fourth Amendment and is illegal without a warrant or a traditional exception to the warrant requirement." *Long Lake I*, 336 Mich App at 538.

The Supreme Court granted the township's application for leave to appeal and scheduled oral argument on the application, but subsequently vacated the Court of Appeals' judgment and remanded to this Court for consideration of

> whether the exclusionary rule applies to this dispute. See, e.g., *PA Bd of Probation & Parole v Scott*, 524 US 357, 364; 118 S Ct 2014; 141 L Ed 2d 344 (1998) (declining to extend the operation of the exclusionary rule beyond the criminal trial context); *Kivela v Dep't of Treasury*, 449 Mich 220; 536 NW2d 498 (1995) (declining to extend the exclusionary rule to a civil tax proceeding). [*Long Lake II*, 973 NW2d 615, 616 (2022).]

## II. LEGAL PRINCIPLES

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, AM IV.]

This constitutional provision guarantees people the right "to be free from unreasonable searches and seizures." *People v Cartwright*, 454 Mich 550, 557; 563 NW2d 208 (1997). The majority in *Long Lake I* determined that the township's actions violated the Fourth Amendment. The Supreme Court has not asked us to address that issue on remand. Because the Supreme Court limited our

review to the exclusionary rule's role in this dispute, we proceed by assuming that a Fourth Amendment violation occurred.

"The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule." *People v Stevens*, 460 Mich 626, 634; 597 NW2d 53 (1999), citing *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), overruled on other grounds in *Elkins v United States*, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960); *Silverman v United States*, 365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961). But suppression of illegally obtained evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v United States*, 555 US 135, 137; 129 S Ct 695; 172 L Ed 2d 496 (2009). Rather, once a violation is found, the court must consider whether the exclusionary rule demands suppression of the illegally obtained evidence. The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v Calandra*, 414 US 338, 348; 94 S Ct 613; 38 L Ed 2d 561 (1974). "[T]he 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " *United States v Janis*, 428 US 433, 446; 96 S Ct 3021; 49 L Ed 2d 1046 (1976), quoting *Calandra*, 414 US at 347.

We are now asked to consider whether the exclusionary rule applies in zoning cases such as the one at hand. The United States Supreme Court has repeatedly rejected the application of the exclusionary rule in civil cases. The United States Supreme Court has explained that the purpose of the exclusionary rule is twofold: to deter police misconduct, and to provide a remedy where no other remedy is available. When analyzed under the federal or the Michigan Constitution, suppression of the drone evidence does not serve these goals.

We begin with discussing an outlying case as it assists in explaining away any confusion here. In *One 1958 Plymouth Sedan v Pennsylvania*, 380 US 693, 700; 85 S Ct 1246; 14 L Ed 2d 170 (1965), the Supreme Court held that the exclusionary rule applied in a civil forfeiture action, characterizing the proceeding as "quasi-criminal" in nature. The Court's analysis linked the underlying Pennsylvania civil forfeiture proceeding to a criminal trial. George McGonigle, the car's owner "was arrested and charged with a criminal offense against the Pennsylvania liquor laws." *Id*. The "object" of the forfeiture action, "like a criminal proceeding," was "to penalize" McGonigle for the criminal offense. *Id*. Conviction would have subjected McGonigle "to a minimum penalty of a $100 fine and a maximum penalty of a $500 fine." *Id*. at 701. Yet in the forfeiture proceeding McGonigle stood to lose his sedan, valued at approximately $1,000—double the maximum fine in the criminal case. *Id*. The Court reasoned: "It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, *requiring the determination that the criminal law has been violated*, the same evidence would be admissible." *Id*. (emphasis added).

The legality of McGonigle's possession of the sedan underpinned the Supreme Court's rationale for applying the exclusionary rule. The Court distinguished between the return of McGonigle's car and a hypothetical return of seized "contraband," such as narcotics or "unregistered alcohol." *Id*. at 698-699. Application of the exclusionary rule in the latter circumstances, the Court reasoned, "would clearly have frustrated the express public policy against the possession of such objects." *Id*. at 699. In other words, had the forfeiture action involved an item that McGonigle could not have legally possessed, the outcome may well have been different.

A quartet of civil exclusionary rule cases followed *One 1958 Plymouth Sedan*. In none of these cases did the Supreme Court uphold the use of the exclusionary rule. Rather, in each case the Supreme Court emphasized that the central purpose of the exclusionary rule—deterrence of police misconduct—counsels *against* its application in civil cases.

*Calandra*, 414 US 338, involved grand jury proceedings. The Supreme Court firmly nixed use of the exclusionary rule in that setting, stressing the rule's deterrence function. "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim," the Court explained. *Id*. at 347. "Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]" *Id*. The Court reiterated that "the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id*. at 348.

Expanding on the deterrence concept, the Court urged that the rule "is premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *Id*. In the grand jury context, the Court found that the "extension of the exclusionary rule would seriously impede the grand jury" without a countervailing deterrent effect. *Id*. at 349-351. The grand jury investigates rather than adjudicates guilt or innocence, the Court observed, and "mini-trials" over the application of the exclusionary rule would delay or sidetrack its operations. *Id*. at 350.

The Court also touched on the rule's remedial function. Grand jurors' questions arising from "illegally obtained evidence are only a derivative use of the product of a past unlawful search and seizure." *Id*. at 354. The Court reasoned that "[w]hether such derivative use of illegally obtained evidence by a grand jury should be proscribed presents a question, not of rights, but of remedies." *Id*. The Court noted that "[a]s with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id*. at 348.

The Supreme Court next declined to apply the exclusionary rule in a civil tax proceeding, highlighting that if the rule is to be considered "strong medicine" to prevent police misconduct, it "must be assumed to be a substantial and efficient deterrent." *Janis*, 428 US at 453. *Janis* arose from a suit to recoup federal taxes. Evidence supporting the government's case came from an illegal search conducted by the Los Angeles police. The Court held that excluding evidence illegally seized by the state officers would not "have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion." *Id*. at 454. And in *Janis* the Supreme Court sweepingly declared that "[i]n the complex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." *Id*. at 447. A footnote acknowledged *One 1958 Plymouth Sedan* but characterized the forfeiture in that case as " 'clearly a penalty for a criminal offense.' " *Id*. at 447 n 17, quoting *One 1958 Plymouth Sedan*, 380 US at 701.

*Immigration & Naturalization Serv v Lopez-Mendoza*, 468 US 1032; 104 S Ct 3479; 82 L Ed 2d 778 (1984), came next. There, the Supreme Court foreclosed the application of the exclusionary rule in civil immigration proceedings, invoking the "framework" announced in *Janis*.

-4-

*Id*. at 1041. The *Janis* balancing test, as it is now known, requires a court contemplating applying the exclusionary rule in a civil proceeding to weigh the "prime purpose" of the rule—deterrence—against "the likely costs." *Id*. (quotation marks omitted). The *Lopez-Mendoza* Court acknowledged that a civil deportation proceeding "is a civil complement to a possible criminal prosecution," but noted that "only a very small percentage of arrests of aliens are intended or expected to lead to criminal prosecutions." *Id*. at 1042-1043. The officers violating the Fourth Amendment in a deportation action are "most unlikely to shape" their future conduct "in anticipation of the exclusion of evidence at a formal deportation hearing," the Court explained, because most illegal aliens agree to voluntary deportation and few challenge the legality of their arrests. *Id*. at 1044. "Thus[,] the arresting officer's primary objective, in practice, will be to use evidence in the civil deportation proceeding." *Id*. at 1043.

"On the other side of the scale," the Court explained, "the social costs of applying the exclusionary rule in deportation proceedings are both unusual and significant." *Id*. at 1046. One cost, directly relevant here, is that applying the rule "in proceedings that are intended not to punish past transgressions but to prevent their continuance or renewal would require the courts to close their eyes to ongoing violations of the law. This Court has never before accepted costs of this character in applying the exclusionary rule." *Id*. Invoking a scenario that neatly aligns with this case, the Supreme Court continued:

> Presumably no one would argue that the exclusionary rule should be invoked to prevent an agency from ordering corrective action at a leaking hazardous waste dump if the evidence underlying the order had been improperly obtained, or to compel police to return contraband explosives or drugs to their owner if the contraband had been unlawfully seized. On the rare occasions that it has considered costs of this type the Court has firmly indicated that the exclusionary rule does not extend this far. [*Id*.]

In *Lopez-Mendoza*, 468 US at 1045, the Supreme Court also injected a remedy analysis, explaining that any "deterrent value of the exclusionary rule in deportation proceedings is undermined by the availability of alternative remedies for institutional practices by the INS that might violate Fourth Amendment rights." One such remedy when challenging INS practices, the Court offered, is "declaratory relief against the agency." *Id*. In contrast, "[t]he exclusionary rule provides no remedy for completed wrongs . . . ." *Id*. at 1046.

Most recently, in *Scott*, 524 US at 364, the Supreme Court again declined to extend the operation of the exclusionary rule "beyond the criminal trial context." *Scott* involved an illegal search by a parole agent leading to the revocation of Keith Scott's parole. *Id*. at 360. As cogently pointed out by the dissenting Justices, "a revocation proceeding often serves the same function as a criminal trial, and the revocation hearing may very well present the only forum in which the State will seek to use evidence of a parole violation, even when that evidence would support an independent criminal charge." *Id*. at 370 (Souter, J., dissenting). The dissent further argued that in the parole revocation context, "[t]he deterrent function of the exclusionary rule is . . . implicated as much by a revocation proceeding as by a conventional trial, and the exclusionary rule should be applied accordingly." *Id*. (Souter, J., dissenting).

But the majority of the Supreme Court did not see it that way. Rather, on behalf of four other justices, Justice Thomas justified the majority's refusal to apply the rule by distinguishing the roles of parole agents and police officers. "Even when the officer performing the search is a parole officer, the deterrence benefits of the exclusionary rule remain limited," the majority opined. *Id*. at 368. The Court reasoned that parole agents, unlike police officers, do not "ferret[] out crime," but instead decide "whether their parolees should remain free on parole. Thus, their relationship with parolees is more supervisory than adversarial." *Id*. (quotation marks and citation omitted). Turning to the remedies aspect of the equation, the majority continued: "[T]he harsh deterrent of exclusion is unwarranted, given such other deterrents as departmental training and discipline and the threat of damages actions." *Id*. at 369. And if parole officers behaved like police officers and unconstitutionally seized evidence in the process, "they (like police officers) are undoubtedly aware that any unconstitutionally seized evidence that could lead to an indictment could be suppressed in a criminal trial." *Id*.

United States Supreme Court precedent regarding the exclusionary rule's use in civil cases can be succinctly summarized as follows: it only applies in forfeiture actions when the thing being forfeited as a result of a criminal prosecution is worth more than the criminal fine that might be assessed. That's it.

Michigan law tracks this restrained approach. In fact, our Constitution includes a provision that *constrains* the application of the exclusionary rule. Const 1963, art 1, § 11 states:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. *The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.* [Emphasis added.]

Our Supreme Court proclaimed in *People v Goldston*, 470 Mich 523, 537; 682 NW2d 479 (2004), that our Constitution's "antiexclusionary clause" reflects that the ratifiers preferred "*less* stringent search and seizure protections than required under the Fourth Amendment at that time." (Emphasis added.) And as a plurality explained in *People v Nash*, 418 Mich 196, 214; 341 NW2d 439 (1983) (opinion by BRICKLEY, J.): "The history of Const 1963, art 1, § 11, and its plain import, however, suggest that its further expansion, with the concomitant expansion of the exclusionary rule to enforce it, should occur only when there is a compelling reason to do so."

In *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993), the Michigan Supreme Court interpreted our Constitution's search and seizure provision more protectively than the United States Supreme Court had when applying a Fourth Amendment analysis in *Mich Dep't of State Police v Sitz*, 496 US 444; 110 S Ct 2481; 110 L Ed 2d 412 (1990). But the Michigan Supreme Court in *Sitz* did not propose or endorse any expansion of the exclusionary rule. And although our Supreme Court adopted an exclusionary rule in 1919, long before the United States Supreme Court extended the rule to the states in *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed

2d 1081 (1961), our Supreme Court has never condoned the rule's application in civil proceedings. Indeed, in *Kivela*, 449 Mich at 223, the Court firmly dismissed the notion that our Constitution's exclusionary rule provides a more expansive remedy protection than the federal constitution: "We find little or no support for the conclusion that Michigan law provides a broader suppression remedy."

In *Kivela*, a civil tax proceeding, the Supreme Court adopted the same framework used by the United States Supreme Court in the cases discussed above, weighing the deterrent effect of the exclusionary rule proceeding against its potential benefits. The Court found no " 'compelling reasons' to hold that the Michigan Constitution provides a greater suppression remedy" than the United States Constitution, rejecting that any "deterrent purpose" would be served by extending the rule to civil cases. *Id*. at 234-235. The Court pointed out that "[t]he civil tax proceeding in this case is wholly independent of any criminal prosecutions, and there is no evidence that the law enforcement agents who seized the incriminating financial records were motivated by an unethical desire to illegally assist the Department of Treasury." *Id*. at 235-236.

*Kivela* also distinguished two cases in which our Supreme Court expanded the exclusionary rule: *Lebel v Swincicki*, 354 Mich 427; 93 NW2d 281 (1958), and *McNitt v Citco Drilling Co*, 397 Mich 384; 245 NW2d 18 (1976). While those cases reflect applications of the exclusionary rule in a civil context, the Supreme Court characterized them as inapplicable in the big-picture sense because they "involved removal of blood from a living person, a degree of intrusiveness not present when police armed with a warrant search one's home." *Kivela*, 449 Mich at 236. Guided by *Goldston* and *Kivela*, the question we must answer is whether there is a "compelling reason" to expand the exclusionary rule to civil zoning actions. We resoundingly hold that there is not.

### III. APPLICATION OF PRECEDENT TO THIS CASE

This is a civil case. The township seeks a declaratory judgment and to abate a nuisance. There are no police officers involved. Rather, the township enforces its zoning ordinances through the work of inspectors and zoning enforcement officers. The penalty that might be exacted for maintenance of a nuisance is a civil fine, but the township has sought no fine. Even if the township wanted to impose a fine, MCL 117.4q describes the fine as "civil." "[P]rosecutions for violations of ordinances are in a sense criminal, but . . . such violations are not criminal cases within the meaning of the statutes and rules for review by [the Supreme] Court." *Huron Twp v City Disposal Sys, Inc*, 448 Mich 362, 365; 531 NW2d 153 (1995). The unlikelihood of any penalty being exacted, and the fact that this zoning action is not coupled with a criminal prosecution of any sort, removes it from the realm of "quasi-criminal" matters.

Application of the *Janis* balancing test further establishes that the exclusionary rule has no place here.

Assuming that the drone search was illegal, it was performed by a private party. True, that person acted at the behest of a township official. But the exclusionary rule is intended to deter police misconduct, not that of lower-level bureaucrats who have little or no training in the Fourth Amendment. There is no likelihood that exclusion of the drone evidence in this zoning infraction matter will discourage the police from engaging in future misconduct, since the police were never involved in the first place. Rather, exclusion of the drone evidence likely will deter a township

employee who works in the zoning arena from ever again resorting to a drone to gather evidence of a zoning violation. This is not the purpose of the exclusionary rule.

The cost of excluding this evidence is high. According to the record, the Maxons unsuccessfully attempted to fence in their illegal junkyard, signaling that they knew they were violating zoning rules or the settlement agreement, or both. Even without a fence, trees and vegetation make it difficult to see their property from ground level. Enforcement of the township's zoning ordinance in this situation may depend on the use of drone evidence. And even assuming some marginal deterrent value impacting township officials, the benefit of suppression of the evidence is vastly outweighed by the public's interest in enforcement of zoning regulations.

Finally, the Maxons have a powerful remedy for the alleged violation of their Fourth Amendment rights—a civil lawsuit sounding in constitutional tort. See *Bauserman v Unemployment Ins Agency*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 160813). In a criminal case, application of the exclusionary rule both punishes and penalizes the police. It also benefits the defendant, often by erasing the evidence needed to prosecute. A civil action for damages resulting from a constitutional violation also punishes and penalizes, achieving deterrence. We therefore respectfully disagree with our dissenting colleague that application of the exclusionary rule in this case is necessary to achieve deterrence. The social cost of excluding evidence in a case such as this would be substantial, however, as a public nuisance would potentially remain unabated and incapable of its own remedy.

The exclusionary rule is an essential tool for enforcing the meaning of the Fourth Amendment and discouraging law enforcement officers from trampling on constitutional rights. The rule has been roundly criticized, but survives as demonstrated in the majority and dissenting opinions in *Utah v Strieff*, 579 US 232; 136 S Ct 2056; 195 L Ed 2d 400 (2016). Here, the object of the state officials who allegedly violated the Maxons' rights was not to penalize the Maxons, but to abate a nuisance through the operation of equitable remedies. The proceedings are remedial, not punitive. The exclusionary rule was not intended to operate in this arena, and serves no valuable function.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause